## Hitner's Appeal.

1. Deeds for the separation of husband and wife are valid and effectual both in law and equity, if their object be actual and immediate and not a contingent or future separation, and, if so provided in them, will exclude a widow from all dower and interest in her husband's estate.

2. After the execution of a deed of separation, the husband visited his wife three or four times, wrote to her several times and passed one night in her chamber; these acts by the terms of the deed could be done with her consent; she also received a sum of money and income conveyed to her by the deed, and she did not object to them. *Held*, that the deed was not abrogated.

3. Reconciliation, waiving or abandonment of the deed would have invalidated it.

4. By deed after her husband's death the wife conveyed in trust for her son, all her dower and other rights in the estate of the husband, but in case he died in his minority to go to his heirs, &c., under the intestate laws. *Held*, that she was not a witness to sustain a claim against her husband's estate.

5. Husbands and wives cannot give evidence for or against each other of anything that has come to their knowledge through the confidence of the marriage relation, though the other party were not living. The wife was therefore incompetent to prove cohabitation after the separation. THOMPSON and AGNEW, JJ., dissenting.

January 17th 1867.    Before WOODWARD, C. J., THOMPSON, READ and AGNEW, JJ.    STRONG, J., at Nisi Prius.

Appeal from the decree of the Orphans' Court of *Philadelphia*, confirming the report of the auditor distributing the estate of Isaac Boyd, deceased. Isaac Boyd, the decedent, married Annie R. Murray in August 1858. In May 1859 Joseph P. P. Boyd, a son, was born. Mr. Boyd owned a large estate in Cuba, and spent much of his time there, both before and after his marriage.

On the 7th of November 1860, an indenture " between Isaac Boyd and Annie R. Boyd his wife, of the one part, Daniel R. Erdman * * of the second part, and the said Annie R. Boyd * * the third part," was executed. The deed recited that irreconcilable differences have of late subsisted between the said Isaac Boyd and Annie R. Boyd his wife, insomuch that they have mutually agreed to live separate and apart from each other ;" and by it Boyd agreed that he " will permit and suffer her, * * at all times hereafter during her natural life, to live separate and apart from him, and to reside and be in such place and places, and in such family and families, and with such relations, friends or other persons, and to follow and carry on such trade and business as she, * * at her will and pleasure may see proper to do, notwithstanding her present coverture, and as if she were a *feme sole* and unmarried ; and that the said Isaac Boyd shall not nor will, at any time or times hereafter, sue or prosecute her * * for living separate and apart from him, or compel her to cohabit with him ; * * nor shall nor will, without the consent of the said Annie R. Boyd, visit her or knowingly come to any house or place where she shall or may dwell, reside or be, nor send or cause to be sent

any letter or message to her; nor shall nor will at any time hereafter claim or demand any of the moneys, goods, lands, real estate, chattels or effects," &c.

Boyd also gave to his wife by the deed, $1000, and conveyed to Erdman certain real estate in trust, to allow his wife to occupy it, or receive the rents and profits, or, with her consent, to sell it and pay her the proceeds absolutely if she desired; or to hold it subject to her direction and appointment, &c. Boyd visited his wife three or four times, and passed one night in her chamber, and wrote to her several times after their separation. He died August 14th 1863, having made a will making no provision in it for his wife, and leaving a legacy—the amount did not appear—to his son. The wife received the $1000, and the rents and profits of the real estate, which still remains unsold.

On the 15th of November 1864, Mrs. Boyd executed to Daniel O. Hitner, the appellant, a deed with this recital:—

"Whereas, the said Annie R. Boyd is entitled to her dower or thirds for life, or other rights and estate in and to the real estate, and to a share of the personal estate of which her said late husband, Isaac Boyd, died seised and possessed; and she is desirous of conveying and assigning for the use and benefit of her son, Joseph P. P. Boyd (the child of her said late husband, Isaac Boyd, and of her, the said Annie R.), all her estate, right, title and interest in and to the real estate of her said late husband, in the state of Pennsylvania, but not elsewhere; and also all her estate, right, title and interest in and to that portion, and that portion only, of the personal estate of her said late husband, now lawfully in the possession, or under the control of the executors named in the writing, purporting to be the last will and testament of her said husband." And in consideration of natural love and affection for her son, conveyed to Hitner the above recited estate in trust, to appropriate the income for the support and education of her son until he arrives at age, and then to convey the whole of said estate to him absolutely; if he should die in his minority, to convey it to his heirs and distributees under the intestate laws.

The account of Samuel Welsh and George Junkin, Jr., executors, &c., of Isaac Boyd, was referred to James Lynd, Esq., to adjust, and report distribution of the balance.

On the hearing before the auditor, Mrs. Boyd was offered by Hitner as witness to prove cohabitation between herself and husband after the deed of separation, and was rejected by the auditor.

Hitner also asked that an issue should be awarded to determine the facts whether the deed of separation was carried out in good faith; whether it was not set aside by the mutual consent of the parties; whether the parties did not cohabit as man and wife

after its delivery; and whether its covenants were kept by Isaac Boyd?

The auditor declined to recommend an issue.

It was then contended, on behalf of Hitner, that the articles of separation were never carried into effect in good faith; that said articles, if so carried into effect, were subsequently disregarded and set aside by the mutual consent of the parties thereto; and that under the deed of trust from Mrs. Boyd, he was entitled to all her interest under her husband's estate, as if no deed of separation had been made. The auditor reported against his claims.

On exceptions, the Orphans' Court confirmed the report of the auditor. Hitner appealed and assigned the following errors:—

1. Sustaining the decision of the auditor in rejecting the testimony of Annie R. Boyd, to prove reconciliation.

2. Refusing to award an issue to determine whether or not the deed of separation was acted on and carried into effect in good faith; and the subsequent acts of the parties had not in effect revoked it.

3. Deciding that the deed of separation was carried into effect in good faith; and not set aside and revoked by the subsequent act of the parties.

4. Deciding that friendly visits of the testator to his wife after the execution of the deed, and cohabitation with her, did not act as a revocation.

*J. E. Gowen*, for appellant.—Mrs. Boyd's testimony was to show that the marital relation still existed. The law does not seek to keep this secret, it is in accordance with public policy that it should be known.

The rule in Post *v.* Avery is to preserve a parity of right between parties: Phinney *v.* Tracey, 1 Barr 175; Commonwealth *v.* O. & Penna. Railroad, 1 Grant 348; Evans *v.* Dela, 11 Casey 457. The interest of Mrs. Boyd was not a chose in action, being her estate and interest under the intestate laws: Sheldon *v.* Sill, 8 How. 441–49; Myrick *v.* Howard, 1 Carr. & Mars. 648 (41 E. C. L. R. 351); Moody *v.* Fulmer, 3 Grant 17; Carter *v.* Trueman, 7 Barr 315; Chambers *v.* Spencer, 5 Watts 405; 2 Greenl. Ev., § 151, and cases cited; 3 Stark. Ev. 224; Bailey *v.* Knapp, 7 Harris 192; Lindsay *v.* Malone, 11 Id. 24; Hartman *v.* Keystone Insurance Company, 9 Id. 176; Cornell *v.* Vanartsdalen, 4 Barr 364; Steininger *v.* Hoch, 6 Wright 432; Thomas *v.* Madden, 14 Id. 261; Beveridge *v.* Minter, 1 Carr. & P. 364.

A material fact being in dispute, an issue should have been granted: Beehler's Estate, 3 Phila. R. 254.

By forgiveness and reconciliation a deed of separation will become void: Fletcher *v.* Fletcher, 3 Bro. C. C. 619, 2 Cox Ch. Cas. 99;

Bateman *v.* Ross, 1 Dow's Rep. 235, 245 ; St. Johns *v.* St. Johns, 11 Vesey 526, 531 ; Westmeath *v.* Westmeath, 1 D. & C. 519 ; Hindley *v.* Westmeath, 6 B. & C. 200 ; Slatter *v.* Slatter, 1 Y. & C. 28. The law favors reconcilation independently of the intention of the parties : Westmeath *v.* Salisbury, 5 Bligh N. S. 339, 371 ; Carson *v.* Murray, 3 Paige 483, 501 ; Shelford on Marriage and Divorce 629 ; Macqueen on Husband and Wife 341, n. 2 ; 2 Bishop on Marriage and Divorce, § 45, and cases cited ; Timmings *v.* Timmings, 3 Hagg. Ecc. 76, 5 Eng. Ecc. 22 ; 2 Bright on Husband and Wife 320 ; Scholey *v.* Goodman, 1 C. & P. 36 ; Atherly on Marriage Settlement 382.

*W. F. Judson* and *G. Junkin, Jr.*, for appellees.—An assignor cannot be a witness in an action when the claim assigned comes in question : Hartman *v.* Keystone Insurance Company, 9 Harris 476 ; Grayson's Appeal, 5 Barr 395 ; Clover *v.* Painter, 2 Barr 46. Although a legatee, &c., may be a witness, where he executes a release to the others who are to get the estate : Newlin *v.* Newlin, 1 S. & R. 279 ; Jacoby *v.* Laussatt, 6 S. & R. 300 ; Carter *v.* Trueman, 7 Barr 315 ; or where the interest is collateral merely : Steininger *v.* Hoch, 6 Wright 433 ; Patterson *v.* Reed, 7 W. & S. 144 ; Haus *v.* Palmer, 9 Harris 296 ; yet he cannot by assigning his interest to another. As widow of the decedent she could not be a witness of facts obtained by her situation as wife : 1 Greenl. Ev. § 254, 334, 337–38 ; Terry *v.* Bilcher, 1 Bailey 568 ; Stark. on Ev. (Sharswood's Ed.) 140, n.; Barnes *v.* Camack, 1 Barb. S. C. Rep. 395 ; Chambers *v.* Spencer, 5 Watts 406 ; Cornell *v.* Vanartsdalen, 4 Barr 373 ; Coffin *v.* Jones, 13 Pick. 445 ; Williams *v.* Baldwin, 7 Verm. 506 ; Wells *v.* Tucker, 3 Binn. 366.

There was no case for a jury, the accountants produced no witnesses ; it was a question of law—granting an issue is of grace.

The articles of separation were valid : Dillinger's Appeal, 11 Casey 362 ; McKennan *v.* Phillips, 6 Wh. 571 ; Blaker *v.* Cooper, 7 S. & R. 500 ; Hutton *v.* Duey, 3 Barr 104.

The authorities are that if the parties afterwards *lived together*, the presumption is that they have agreed to abrogate the articles : 2 Roper on Husband and Wife 271, 316 ; Bright on Husband and Wife 319 ; Westmeath *v.* Salisbury, 5 Bligh 370 ; Shelthar *v.* Gregory, 2 Wend. 423. The law does this for the protection of the public : Bateman *v.* Ross, 1 Dow. 235, 519 ; Heyer *v.* Berger, 1 Hoff. Ch. R. 1 ; Shelthar *v.* Gregory, *supra ;* Scholey *v.* Goodman, 1 C. & P. 36 ; 5 Bligh N. S. 340 ; even as to one occasion of intercourse, the evidence is not at all satisfactory.

The deed was a settlement executed, which reconciliation and living together will not avoid : Dillinger's Appeal, *supra ;* 2 Roper on Husband and Wife 271 ; Wardle *v.* Jacobs, 3 Merivale

4 P. F. SMITH—8

225 ; 9 Beav. 437 ; Holme *v.* Chitty, 10 Jur. 323 ; Atherly on Marriage Settlement 382, n. 1 ; Seagrave *v.* Seagrave, 13 Ves. 441–3 ; Sidney *v.* Sidney, 3 P. Wms. 276 ; Wilson *v.* Mushett, 3 B. & Ald. 743.

In addition, Mrs. Boyd has received the $1000, and the rents and profits of the real estate from the execution of the deed.

*J. E. Gowen,* for appellant, in reply.

The opinion of the court was delivered, January 28th 1867, by
READ, J.—In Wilson *v.* Wilson, 5 House of Lords Cases 59, Lord St. Leonards said, " As regards the point of law I think there ought to be no doubt, and can be no doubt now entertained as to how that stands. It is perfectly and clearly settled and now only to be reversed by Act of Parliament, that deeds of separation may and must, if they are properly framed, be carried into execution by the courts of this country. There is no question at all about that." After explaining a misapprehension as to some expressions used by Lord Cottenham, he said, " I only mention it, in consequence of what has fallen from my noble and learned friend who has preceded me, because it must not be doubted that the law of this country is, that deeds of separation are valid and will be carried into execution."

The same doctrine is distinctly stated in a former hearing of the same case by Lord Cottenham, 1 Id. 572, citing Jones *v.* Waite, 9 Clark & Finnelly 109, and the language of Lord Chief Justice Tindal in delivering the opinion of the judges in that case.

In Pennsylvania this rule has been adopted in its fullest extent. In Hutton *v.* Hutton's Administrators, 3 Barr 100, Judge Rogers said, " Deeds for the separation of husband and wife are valid and effectual both at law and in equity provided their object be actual and immediate and not a contingent or future separation." And in Dillinger's Appeal, 11 Casey 357, the same doctrine is maintained and carried out, excluding the widow from all dower and interest in the real and personal estate of her husband agreeably to the deed of separation.

In August 1858, Isaac Boyd, then upwards of sixty-five years old, married Annie R. Murray, who was about forty years younger, and in May 1855, a son was born and named Joseph P. P. Boyd. For many years previous to his marriage, Mr. Boyd went to Cuba, where he had considerable property, in November or December in each year, and returned the following June or July. After their marriage they lived together until his return to Cuba in November or December 1858 ; Mrs. Boyd spending that winter in this city. In the spring or summer of 1859 he returned to Philadelphia. Mr. and Mrs. Boyd lived in this city during that summer, he getting his meals at Bloodgood's Hotel, but passing

the nights with his wife at her brother's house, where she then boarded. In November 1859, he again went to Cuba, leaving her and her son here, with orders upon his agents here for the means of her support. In July 1860, he returned to this city and very shortly after this a difficulty arose between him and his wife which must have been of a serious character, as during that summer he did not sleep at the house where his wife boarded, and on the 7th of November 1860, a deed of separation was executed by them and a trustee appointed.

This instrument in its recital speaks of "domestic confidence and reciprocal affections existing no more," and all its provisions look to an entire and permanent separation of the husband and wife, and a permanent provision for the wife, by the conveyance of certain real and personal estate to the trustee absolutely. There is also the usual provision for her living separate and apart as if she were a *feme sole*, and that he shall not visit her without her consent. He is not to be liable for her debts, or for alimony, and she covenants not to claim any right or title to any real or personal estate of which said Isaac Boyd may be seised or possessed, or any part thereof.

On the 25th May 1861, her brother, William Murray, became the trustee in this deed in the place of Mr. Eardman. A correspondence took place between Mr. and Mrs. Boyd between the execution of the deed and the substitution of her brother as her trustee, commenced by her, but which has no effect upon the questions in this case.

It appears that from the 7th of November 1860 until his death, in August 1863, he was only three or four times at Mr. Murray's [house], where his wife lived, and not at all in 1863. There is an effort, however, to show a reconciliation in 1861, based upon his passing one night in his wife's room at her brother's house. The evidence as to the time when this took place, whether before or after the deed of separation, is neither clear nor satisfactory. The auditor says, "After the execution of the articles of separation, it does not appear that he saw his wife for a period of six weeks; in fact it is not clear that he saw her until after his return from Cuba, a period of over six months, and only three or four times in all after their execution. The real difficulty in the case, both of fact and of law, arises upon the second point. The evidence shows that the testator visited his wife once or twice each year after the separation, except the year 1863, in which he died; also that he corresponded with her several times, the last letter dated May 1st 1861; also that he passed one night in her chamber after the execution of the articles of separation. The evidence of this, however, is not as positive as might be. Do these acts, without more, constitute in law a violation of the articles of separation?"

The said Isaac Boyd " shall not nor will, *without the consent* of the said Annie R. Boyd, visit her or knowingly come to any place or house where she may dwell, reside or be, nor send, or cause to be sent, any letter or message to her."

" With the consent of his wife, the testator could commit any of the acts proven against him and not violate the covenants just quoted. There is no evidence whatever that she objected to any of said acts, or that the slightest coercion was used by the testator. Her consent can fairly be inferred. Mr. Gowen appealed to the doctrine of reconciliation in support of the position that the articles of separation were abrogated, but upon an examination of the numerous authorities cited, I am satisfied that a manifest intention of the parties to live together again as man and wife must be shown, and the evidence in this case does not show any such intention."

This is a correct statement of the law ; and the conduct of both parties shows clearly there was no reconciliation, and no determination or wish or desire to live together again as man and wife. The wife acted under the deed of separation, and has always received the income of the real estate and all the personal estate up to the present time. The theory of reconciliation, waiver or abandonment, would have invalidated this deed, but she has never evinced any wish or intention to act upon this view of the question. So, after seeing her husband but three or four times in two years, she never sees him at all during the year in which he died. She believed the separation was complete and the deed inviolate, and it is clear the testator so thought and acted. The acts of both parties showed that both believed they were as completely separated as two persons could be who were still in strict law man and wife.

We are therefore of opinion that the auditor was right in his decision upon this question.

But it is assigned for error that Mrs. Boyd, now Mrs. Appeldorn, was rejected as a witness.

Mrs. Boyd, by deed dated 15th of November 1864, conveyed to Daniel O. Hitner all her interest in the estate of Isaac Boyd, as his widow, in trust for her son, Joseph P. P. Boyd ; " but if the said Joseph P. P. Boyd should die before attaining his majority, then to grant, convey and transfer the said estate, real and personal, absolutely and free from all trust, to the heirs and distributees of the said Joseph P. P. Boyd, under the intestate laws of Pennsylvania, in the proportions and for the estates to which they would have been entitled to the same if the said Joseph P. P. Boyd had died seised and possessed of the said real and personal estate."

This case comes clearly within Post *v.* Avery, 5 W. & S. 509, and the cases which have followed it. This deed assigns the

distributive share in her husband's personal estate, which she claims as his widow, and is distinctly ruled by Haus v. Palmer, 9 Harris 296.

Besides, under the provisions of this deed, if the *cestui que trust*, her son, dies under age during her lifetime, the estate thus assigned reverts to her as his heir and next of kin under the intestate laws. This may not be an interest to exclude the witness, but affords a moral support to the legal cause of her rejection.

The auditor assigns another reason for her exclusion, which is supported by great authority. Taylor, in his Treatise on the Law of Evidence, vol. 1, p. 787, says: "The old common-law rule, which precludes husbands and wives from giving evidence for or against each other, has been construed by the judges to mean that whatever had come to the knowledge of either party by means of the hallowed confidence which marriage implies, could not afterwards be divulged in testimony, even though the other party were no longer living."

This is clearly laid down in O'Connor v. Majoribanks, 4 M. & G. 435 (43 E. C. L. R.), after a full argument, by the Court of Common Pleas, C. J. Tindal and the other judges not confining the rule to cases where the communications between the husband and wife were of a confidential nature, and holding the evidence of the widow was improperly admitted.

The same rule is laid down by Phillips & Arnold, vol. 1, p. 66 (6th ed.) : "The reason for excluding the husband and wife from giving evidence either for or against each other, is founded partly on their identity of interest and partly on a principle of public policy which deems it necessary to guard the security and confidence of private life even at the risk of an occasional failure of justice." And this extends to cases where the marriage is dissolved by divorce or death, and is not confined to confidential communications.

The same doctrine is clearly stated by Greenleaf, vol. 1, §§ 254 and 334, and it is so ruled by the Court of Appeals of New York, in Hasbrouck v. Vandervoort, 5 Seld. 153, notwithstanding the provisions of the Code of 1849, making interested persons witnesses.

Judge Johnson traces the rule from Coke Litt. 6 b., to Alcock v. Alcock, decided by Vice-Chancellor Parker in 1852 (12 Eng. L. & Eq. R. 354, 10 Jur. 653). The rule is also so stated by Judge Rogers in Cornell v. Vanartsdalen, 4 Barr 374, and by the Supreme Court of the United States, in Stein. v. Bowman, 13 Peters 221, 222, 223.

The witness was therefore properly excluded by the auditor; and it is very doubtful whether, if she had been admitted, her evidence would have strengthened the plaintiff's case.

The decree of the Orphans' Court is affirmed.

.[Hitner's Appeal.]

THOMPSON and AGNEW, JJ., concur in all the foregoing, excepting the last portion in regard to the competency of the widow to testify as to acts of cohabitation.