# Henkel's Estate.

*Husband and wife—Agreement of separation—Reconciliation—Marital rights after reconciliation.*

A reconciliation between a husband and wife abrogates the covenants of an agreement of separation so far as the agreement is not executed unless there is an agreement that it shall not be abrogated. If the covenants releasing the interest of each in the estate of the other are executory so that effect cannot be given to them until the death of either the husband or wife, a reconciliation before such death occurs restores to the parties their marital rights in the estate of which either dies possessed.

634      HENKEL'S ESTATE.

Statement of Facts—Opinion of Court below.   |59 Pa. Superior Ct.

Argued April 13, 1915. Appeals, Nos. 64 and 65, April T., 1915, by Mary and Jacob Meyer, from decree of O. C. Allegheny Co., March T., 1914, No. 53, dismissing exceptions to adjudication in Estate of Lena Henkel, deceased. Before RICE, P. J., ORLADY, HEAD, HENDERSON, KEPHART and TREXLER, JJ. Affirmed.

Exception to adjudication.

OVER, P. J., filed the following opinion:

Lena Henkel died testate January 6, 1913, leaving to survive her a husband but no issue. They were married in May, 1891, she then being a widow without issue and he a widower having three children living, and he then received from her $900 of her money. In her will she gave all of her estate, except a legacy of $50.00, to a sister and a brother who survives her, and her husband who refuses to take under it claims the amount for distribution here, $1,774.64, under the intestate laws. The legatees claim, however, that he released his interest in her estate and is not entitled to participate in its distribution. As to this question the facts are these:

1. On July 9, 1909, they executed a separation agreement, with the usual provisions as to living apart, and containing the following covenant by him, and a similar one by her, viz.:

"That he shall and will not at any time hereafter claim or demand any of her real or personal estate which she now hath, or which she may hereafter in any manner acquire; that she may enjoy and dispose of the same as if she were a feme sole and not married. He the said William Henkel, hereby waives, releases and relinquishes all his right and interest which he as her husband has, or may have, in her real and personal property during her life, and also which may accrue to him at her death, and her real and personal estate shall be divided and distributed as if he were previously dead."

This agreement also contains the following recital:

"For the decent support and maintenance of his said wife during her natural life, the said William Henkel has paid to her the sum of twenty-three hundred and fifty ($2,350) dollars at the signing and sealing hereof, the receipt whereof is hereby acknowledged by the said Lena Henkel, and in consideration thereof the said Lena Henkel hereby waives, releases and relinquishes to the said William Henkel, all right to her future support and maintenance, and all his liability thereafter during her natural life, and also waives, releases and relinquishes all her right and interest in any real and personal property which the said William Henkel now has, or may hereafter acquire."

2. Prior to the execution of this agreement she had asked him to pay her the money he had received from her after their marriage.

3. The decedent and her husband, William Henkel, owned as tenants by entirety a lot on Dauphin street, in the tenth ward, Pittsburg, and he also owned other lots on Dearborn street, in said ward, and when the separation agreement was executed, they joined in a deed conveying the lot on Dauphin street and the lots on Dearborn street, to Ida Peetz, a daughter of said William Henkel, in trust for the following purpose: "For the said William Henkel during his natural life, and after his death for the use of the children of the said William Henkel." Being all of his real estate.

4. They lived apart until July 9, 1909, when, as he testified, "she says she will be good and work and then I take her back again;" and they lived together in two rooms on the second floor of one of his houses on Dearborn street until she was taken to the hospital shortly before her death. She had a bank account opened July 9, 1909, and between November 1, 1909, and June 21, 1912, checked out of it $320. Her husband demanded and received from her attorney $150 of the

money paid her when they separated to pay the expenses of her illness.

5. In March, 1911, her husband and Ida Peetz, trustee, made an agreement to sell for $2,200 the Dauphin street property, the title to which had been vested in the decedent and her husband by entireties; the purchaser refused to take title unless the decedent joined in the deed, and he said, "That he had a separation from his wife, that she didn't need to sign the deed, and that he had given her so much money, and that she had nothing to do with it and that she was satisfied." The purchaser still refusing to take title on March 22, 1911, she joined with her husband and Ida Peetz, trustee, in a deed for the property, no part of the consideration being paid to her.

6. On March 27, 1912, Ida Peetz, trustee, and the decedent's husband, William Henkel, without the said Lena Henkel joining, made a deed conveying to his two surviving daughters, Ida Peetz and Minnie R. Ludwig, the remaining property on Dearborn street, and he had the separation agreement recorded the same day.

7. The fund for distribution here is part of the $2,350, paid by William Henkel to his wife when they separated.

It is well settled that a separation agreement between husband and wife is abrogated or invalidated by a subsequent reconciliation and resumption of marital duties: Hitner's App., 54 Pa. 110. But it is contended by counsel for the legatees that the agreement here was both a separation and post-nuptial agreement by which each of the parties released all of the marital interests in the estate of the other.

The question as to whether a reconciliation after separation under an agreement abrogates all the provisions of the contract was considered in Nicol v. Nicol, L. R. 31 Ch. Div. 524, Lord Justice Bowen saying:

"I think that the true principle is that a renewal of cohabitation would put an end to all or any of the provisions of the separation deed so far as the language

of the deed properly construed by the light of the surrounding circumstances shows that its provisions were only intended to take effect whilst the separation lasted. . . . Separation deeds are often very complicated and some provisions may be intended to apply even in the case of a reconciliation while others may be quite inapplicable to such a state of things, and I should prefer to construe each deed by the light of its surrounding circumstances rather than to lay down a crystalized rule. I think we can decide most cases by the terms of the deed itself. . . . We have to find out what the parties meant."

The question is also fully discussed and cases cited in Dennis v. Perkins, 88 Kansas, 428, where it was held that:

"Reconciliation and the resumption of marital relations do not necessarily avoid a separation agreement previously made by the parties, such effect depending on the question whether the provisions of the contract and the conduct and circumstances show an intention to treat the agreement as no longer in force.

"Such reconciliation and resumption do not warrant the court in deeming such contract avoid any further, if at all, than its terms show in connection with the situation and conduct of the parties indicate their intention to avoid it."

To the same effect is Smith v. Terry, 166 N. Y. 632 and Baird v. Connell, 121 Iowa, 278, where it is said:

"There is no doubt that an agreement of separation will be considered as rescinded if the parties afterward cohabit and live together as husband and wife. And in such cases all the provisions of the agreement will cease to operate, and the parties will be restored to their marital rights to the same extent as if no separation had taken place: Randall v. Randall, 37 Mich. 563. But this rule does not go to the extent claimed by counsel for plaintiff. While the agreement is, no doubt, treated as rescinded in so far as the consideration therefor con-

sists in the agreement to live apart, there may be other conditions, based on independent considerations, which are not annulled by the resumption of· conjugal relations."

The only cases in this state bearing on the question are Burkholder's App., 105 Pa. 31, and Singer's Est., 233 Pa. 55. In the former it was held that:

"A post-nuptial contract, main object of which was the settlement of differences between husband and wife which had caused a temporary separation is found upon sufficient consideration; and after it has been fully executed by husband and wife during their lives, a provision therein in favor of the wife's issue ·by a former marriage, contingent upon the husband's surviving his wife, and dying, will, after the happening of said contingency, be enforced in the settlement of the husband's estate, in the orphans' court."

And in Singer's Est., it was held that

"Where a husband and wife enter into a written· agreement to live separate and apart from each other during their natural lives, and in the agreement adjust their respective property rights, but subsequently enter into a second agreement in which they recite the execution of the former agreement, and that the parties have become reconciled and desire to live together but stipulate that the terms of the former agreement should in no other respect be modified, and thereafter there is no subsequent separation, the husband cannot after the death of his wife demand that he be relieved from the performance of his part of the contract and claim a share in her estate under the intestate laws."

It seems clear then that so far as the agreement was executed it was not abrogated by the reconciliation. It was executed so far as divesting the wife's interest in her husband's real estate and that held by them in entireties and as to vesting in her the title to the money paid.

It is contended, however, by counsel for the legatees

that it must be inferred from the facts of the case that they intended only to abrogate the covenants in the agreement as to living apart and that the covenants releasing the marital rights of each in the estate of the other are still in force. The argument advanced to support this proposition is that the husband owed his wife $900, with interest from May, 1901, when the agreement was executed, that although it recites that the $2,350 paid his wife was for her support, the greater part of this amount was then actually due her, that he made no demand for it when they became reconciled nor she for the cancellation of the trust deed, and that their conduct after the reconciliation shows that they considered all the covenants of the agreement still in force except that as to living apart.

Had there been an express stipulation to that effect when they became reconciled, Singer's estate, supra, would no doubt rule this case against the claimant. There was not, however, nor can it be inferred that such was their intention, as the inference is they treated only the executed covenants as not abrogated. All the authorities are to the effect that reconciliation abrogates the covenants of the agreement of separation so far as it is not executed unless there is an agreement that it shall not be abrogated. Here, the covenants releasing the interest of each in the estate of the other were executory, as effect could not be given to them until the death of one, and our conclusion is that the reconciliation before that occurred restored them to their marital rights in the estate of which either died possessed. This conclusion is in accord with Roberts v. Hardy, 89 Mo. App. 86. There husband and wife agreed to live apart he paying a trustee for her $1,000, which was invested in the purchase of a farm, she releasing all her interest in his estate at his decease; they became reconciled and after the husband's death it was held "That the money consideration recited in the deed of separation is retained by the wife after the reconcilia-

640 HENKEL'S ESTATE.

Opinion of Court below—Opinion of the Court. [59 Pa. Superior Ct.

tion is a matter of no importance, nor is her renunciation of the deed of separation after her husband's death; but the fact that the husband brought her back and lived with her repudiates the deed and clothes her with all the rights of a wife including her statutory dower." As the decedent left no issue all of the fund will be distributed to the surviving husband.

*Error assigned* was decree dismissing the exceptions.

*Howard Zacharias,* of *Diamond & Zacharias,* for appellant.

*A. E. Weger,* with him *R. F. Weger,* for appellee.

PER CURIAM, May 14, 1915:

This case is so well stated in the opinion filed by the learned president judge of the orphans' court, that no good purpose would be subserved by attempting to restate it. The question is interesting, and a good deal can be said on both sides of it, but after full consideration of it we all concur in the conclusions reached by the orphans' court, and for the reasons given in Judge OVER's opinion.

The decree is affirmed: costs of each appeal to be paid by the appellant.