## Addleman v. Addleman

*W. C. Montgomery* and *Richard G. Miller*, for libellant.
*Kyle & Reinhart*, for respondent.

SAYERS, P. J., October 7, 1935.—This is a demurrer to a libel for divorce in which Mary R. Addleman is libellant and John A. Addleman is respondent. In a proper case a demurrer may be interposed, and, if well taken, the libel may be dismissed or the libellant allowed to amend: Edwards on Divorce 80 (1930). If the libel fails to state a cause of action either in form or substance, it may be demurred to: Crone v. Crone, 14 Pa. C. C. 456. A defect in substance will prevent the entry of a decree in favor of the libellant, and in such cases the proceeding may be quashed, without prejudice.

In Gillardon v. Gillardon, 15 W. N. C. 528, a demurrer was sustained with leave to amend, so that the libel would set forth the time, place and circumstances of the alleged cause of divorce. In Clark v. Clark, 29 Pa. C. C. 657, a demurrer was sustained with leave to libellant to discontinue a prior proceeding in divorce. In Sturgeon on Divorce, at page 348, we find that: "Where any ground of defense is apparent on the face of the libel, either on account of the matter contained in it, or omissions of material averments, or in the case made by it, or the form of relief prayed for, the proper mode of defense is by demurrer."

The demurrer filed in this case by the respondent sets up: (1) That the libel offends against our rule of court in that the two causes for divorce are set out in one numbered paragraph; (2) that upon the face of the libel with the separation agreement incorporated therein, libellant is not entitled to relief of support and mainte-nance and to have the costs of the proceeding paid by the respondent; (3) that upon the face of the libel libel-lant is not entitled to the relief of divorce from bed and board; and (4) that upon the face of the libel the complaint is not made in sincerity and truth; and generally for other good causes of demurrer appearing upon the face of the libel.

The thirteenth paragraph of the libel sets forth that the libellant was compelled in May 1912, by cruel and barbarous treatment of the respondent, endangering her life, to withdraw from his household, and that having afterwards resumed the marital relationship, "said re-spondent in violation of his marriage vows and the laws of the Commonwealth, continued by cruel and barbarous treatment to endanger the life of libellant; and hath of-fered such indignities to the person of libellant as to render her condition intolerable and life burdensome, and thereby compelled her to withdraw from his home and family. That such conduct was but a continuation of

that which had begun before the agreement of separation referred to."

The agreement of separation, as set up in the libel, was made August 31, 1912, and recorded September 2, 1912, in the recorder's office of Greene County, as recited therein, and in a notice attached to the libel and marked exhibit A. The libel also avers that after living separate and apart from her husband, the libellant, about the month of October 1912, returned to the respondent, "when and where she was received by the respondent into his home, the marital relationship resumed, and libellant and respondent lived and cohabited together as husband and wife from that time until May 21, 1930." Section 1 of rule 22 of this court provides that "libels shall set out the matters relied on distinctly, in separate paragraphs, consecutively numbered. . . . Subsequent paragraphs shall contain a succinct statement of the time, place, and circumstances of the alleged cause of divorce. Where more than one cause of divorce is alleged each shall be set out in a separate paragraph."

An inspection of the libel and a correct understanding of the rule of court makes it apparent that the first cause of demurrer which relates to the form of the libel should be sustained. The language of the rule is almost identical with the language used in paragraph 1022 on pages 269 and 270 of Sturgeon on Divorce, which refers to the case of Wise v. Wise, 1 Wash. Co. 123. The Wise case, which was decided by President Judge McIlvaine of Washington County, held that it was not good pleading to join in one paragraph two separate causes of divorce so that the two taken together appear to be one cause. Nothing is decided in the Wise case except that the joining of the two causes in one paragraph is bad practice.

Let us now consider the second cause of demurrer. The facts set up in the libel show that there was a separation, that a separation agreement was entered into for the sum of $5,500, which was paid in cash to the libellant.

Under the separation agreement it is provided that they shall live separate and apart from each other, be permitted to carry on trade or business separately, and that the respondent may not compel the libellant to live with him or molest, disturb or trouble her or any other person with whom she is living. The libellant agreed to the same thing on her part, including the right to convey lands and property with the same effect as though the spouse not joining in any such transfer was naturally dead. Such separation agreements are valid and are recognized in this Commonwealth and have been upheld by the courts: Commonwealth v. Richards, 131 Pa. 209; Frank's Estate, 195 Pa. 26; Fennell's Estate, 207 Pa. 309.

The allegation of reconciliation contained in the tenth paragraph of the libel is there inserted as an allegation upon which libellant argues that the separation agreement was abrogated. Early cases in this State might be cited in support of such contention, but none has been brought to the attention of the court. In Singer's Estate, 233 Pa. 55, 68, Mr. Justice Mestrezat says: . . . "It is equally true and is the settled law of the state that a subsequent reconciliation and resumption of marital duties by the parties, not affected by any agreement, would abrogate or invalidate the contract of separation." In this case, however, the court held that the original separation agreement was not abrogated, but was republished and confirmed because the second agreement entered into before reconciliation provided that the first was to remain in force "except the stipulation that the parties should live apart".

It does not seem to be the settled law of the State that a subsequent reconciliation always abrogates the separation agreement. We find in Henkel's Estate, 59 Pa. Superior Ct. 633, that "A reconciliation between a husband and wife abrogates the covenants of an agreement of separation so far as the agreement is not executed". The agreement in the instant case was fully executed and

the money paid, and it was agreed that neither the libellant nor respondent should thereafter molest, disturb, trouble or visit the other without consent. In Henkel's Estate, supra, Judge Over, writing the opinion of the lower court, which the Superior Court affirmed per curiam, said (p. 638) : "It seems clear then that so far as the agreement was executed it was not abrogated by the reconciliation. It was executed so far as divesting the wife's interest in her husband's real estate and that held by them in entireties and as to vesting in her the title to the money paid." On page 639 we also find this expression: "All the authorities are to the effect that reconciliation abrogates the covenants of the agreement of separation so far as it is not executed unless there is an agreement that it shall not be abrogated."

It seems to this court that the solemn deed of separation fully executed could not be set aside by mere cohabitation and living together. Such a deed should not be abrogated by the conduct of the parties as disclosed by the facts set forth in the libel. The thirteenth paragraph of the libel shows that the alleged causes of divorce were but a continuation of the things which had been carried on before the date of the agreement of separation. Other averments in the libel, as well as the notice attached to the libel and marked exhibit A, indicate that the separation agreement had not been abrogated and that the libellant had intruded upon the premises of the respondent and was living there or remaining there without his consent. If we accept the allegation of facts set up in the libel and the exhibit attached thereto, as we are bound to do in considering the reasons in support of this demurrer, the libel on its face fails to show anything that would abrogate or set aside the separation agreement, or that there was such reconciliation or resumption of the marriage relation as would support a subsequent application for divorce, except the mere allegations of those facts without particulars. The deed in this case provided for a valid and effectual separation, which was actually and

immediately carried out, and certainly the facts as disclosed by the libel in this case would not show such a reconciliation as would abrogate or set aside the separation agreement. See Hitner's Appeal, 54 Pa. 110.

As we have already seen, a distinction exists between an executory separation deed or postnuptial settlement and one that is fully executed. In discussing the law generally relating to this subject, Mr. Justice Maxey in Ray's Estate, 304 Pa. 421, 426, has the following to say with regard to the question of subsequent reconciliation and avoidance of the contract:

"The fundamental question in this case is whether the agreement between the husband and wife of September 29, 1928, was a postnuptial final and definite settlement of their respective rights in Ray's property or merely a separation agreement which would ipso facto terminate by the subsequent reconciliation of the parties."

And at page 427: "This agreement cannot be construed as anything other than a postnuptial settlement of property rights between the husband and wife. A separation agreement ordinarily provides for a separation and for the wife's support during the separation. Its provisions are usually executory in character. The subsequent cohabitation of the parties is evidence of an intention to abandon the agreement. As the auditor well said: 'It is not subsequent cohabitation alone which avoids such agreements, but the intentional renunciation of them, which the resumption of marital relations sometimes evidences. So far as subsequent cohabitation establishes such an intention and so far only does it have the effect of avoiding the contract. Whether it does so properly is a matter of intention to be ascertained from the conduct and circumstances as a question of fact: Daniels v. Benedict, 38 C. C. A. 592, 97 Fed. 367; Dennis v. Perkins, 88 Pac. 165.' The reconciliation of the parties and their living together as husband and wife subsequent to a mere separation agreement make the inference of intention to

renounce the agreement of separation inevitable, for their action then becomes inconsistent with it.

"Henkel's Est., 59 Pa. Superior Ct. 633, held that a reconciliation between a husband and wife abrogates the covenants of an agreement of separation so far as the agreement is not executed unless there is an agreement that it shall not be abrogated, and that if the covenants releasing the interest of each in the estate of the other are executory so that effect cannot be given to them until the death of either the husband or wife, a reconciliation before such death occurs restores to the parties their marital rights in the estate of which either dies possessed.

"30 Corpus Juris, 1058, Sec. 833, sets forth: 'A distinction exists between a simple separation agreement containing executory provisions only and a separation settlement making a division and allotment of property and property interests between the parties. The question whether a deed is a separation deed or a postnuptial settlement depends on the intention of the parties to be gathered from the terms of the deed.' "

Under the facts in the pleadings, dealing as we are with an executed contract, which the libellant attempts to set aside without restoring to the respondent the consideration fully paid by him, the libel in the opinion of this court will not support a decree of divorce from bed and board. If the libel contained allegations of fact showing a reconciliation between the parties, the resumption of marriage relations, and an understanding between the parties that the agreement of separation had been abrogated or canceled, it might support an absolute decree of divorce or divorce from bed and board.

In either case, the court is of opinion that the libellant is not entitled to the relief of support and maintenance and to have the costs of the proceeding advanced or secured by the respondent. "An agreement to live apart containing the usual provision for the support of the wife and children, and declaring the payment thereof may be

enforced in the same manner as if a decree from bed and board with alimony had been entered, is not a bar to a proceeding by either party, either for an absolute divorce or for a divorce a mensa et thoro; but it is a bar to a wife's claim to alimony so long as payments are made under the agreement": Bloom v. Bloom, 22 Pa. C. C. 433.

The case last cited deals with an executory contract, but the principle involved is the same, namely, that the wife's claim to alimony is barred until she shows some understanding to set aside the original separation agreement and a complete resumption of the marriage relation in pursuance thereof.

"If, after an agreement between husband and wife to live separate, the wife agrees to live again with her husband, on condition that he 'behave himself like a man ought to and stop drinking and carousing,' no part of the consideration of the original agreement being surrendered by the wife, and the husband fails to fulfil his promise of reform and they again separate, the parties are remitted to the original agreement, which had been temporarily suspended by mutual consent.

"The evidence showed that the respondent left his wife in May, 1891. In June of the same year, partly in settlement of a suit for maintenance and partly in settlement of their other domestic differences, the husband and wife entered into an amicable agreement of separation, and the husband confessed judgment to his wife in the sum of $882.34 and transferred to her absolutely such of his household goods and effects as she might select. In November of the same year the wife, without surrendering any part of the consideration of the agreement of separation, agreed to live again with her husband on condition that he 'would stop drinking and behave himself like a man ought to.' The husband failed to comply with this condition and the parties again separated. The wife afterwards filed a libel in divorce on the grounds of desertion. *Held*, that the libellant had failed to make out

her case and the libel was dismissed at her cost": Alleman v. Alleman, 2 Dauph. 209.

In a case decided by President Judge Landis of Lancaster County, we find it decided that: "A wife who brings an action for divorce against her husband will not be allowed alimony or counsel fees where she has signed articles of separation in which they agree that 'they shall live separate and apart' and not 'molest or disturb' each other 'by bringing any action at law, either civil or criminal.' ": Conrad v. Conrad, 18 Dist. R. 130. In agreement with the law in the Conrad case, this court is also of the opinion that the libellant on the face of her own agreement and under the facts alleged in her libel, has no right to alimony or costs. The second and third reasons for demurrer are sustained.

The fourth reason for demurrer is overruled, because the court is not prepared to say, from the facts as disclosed in the libel and the affidavit, that the complaint was not made in sincerity and truth.

There is another good cause of demurrer appearing on the face of the libel and one which the court feels that it is bound to take cognizance of as a legal proposition, which would be a bar to any decree of divorce that might be granted on the libel filed in this case. The affidavit to the libel made by the libellant sets forth "that the statements contained in the foregoing libel are true to the best of her knowledge, information and belief." The form of the affidavit provided for in the Act of May 2, 1929, P. L. 1237, sec. 25, 23 PS §25, is: "that the facts contained in said petition or libel are true to the best of his or her knowledge and belief, and that the said complaint is not made out of levity".

The libel should conform to statutory language in stating the cause of divorce: Chroust v. Chroust, 11 D. & C. 76. It seems from the decisions that the affidavit should follow strictly the form laid down in the act of assembly. "A libel is defective which is not sworn to in the form prescribed by the Act 13th March 1815. An affidavit that

the facts therein set forth are true, is not sufficient": Hoffman v. Hoffman, 30 Pa. 417. In Strohmeyer v. Strohmeyer, 67 Pitts. 24, it is held that an affidavit to a libel which states that facts averred by libellant are true "to the best of his knowledge or belief," instead of "to the best of his knowledge and belief" is insufficient to sustain a decree of divorce. Nothing in the law will support an affidavit by a libellant that the facts averred therein may be supported by information which the libellant has obtained. The libel must be founded on "her knowledge and belief", and not on information coupled with her knowledge and belief.

In the case of Walentynowicz v. Walentynowicz, 89 Pa. Superior Ct. 182, we find that: "A libel in divorce must be supported by an affidavit of the libellant, that the complaint is not made out of levity or collusion between the husband and wife, and for the mere purpose of being freed and separated from each other, but in sincerity and truth for the causes mentioned in the petition or libel. Without such an affidavit the libel is fatally defective and the decree for divorce under it will be reversed."

The court should and very frequently does refuse to issue a subpoena for a divorce where the affidavit to the libel is not in proper form, and if the matter had been called to the attention of the court, the subpoena would not have been issued until the affidavit to the libel was corrected in this respect. There might be some doubt as to whether or not under the facts averred the libellant would be entitled to an absolute divorce, in which case the libel might be amended so that it could be put in proper form, but this court is of opinion that the facts disclosed by the libel will not support a decree of divorce from bed and board, and consequently that it cannot be cured by amendment.

### Order

And now, October 7, 1935, after due consideration, and for the reasons hereinbefore set forth, the respondent's

demurrer is sustained, and the libel is dismissed at the cost of the libellant.