## Sernovits v. Roberts

*Power, Bowen & Valimont,* for plaintiffs.
*Ross & Smith,* for defendants.

MONROE, J., June 9, 1961.—This action in trespass was instituted by plaintiffs, husband and wife, against original defendants, Marvin Edward Roberts and Mrs. John (Anne) Jingoli, to recover damages for injuries sustained by wife-plaintiff, medical expenses incurred by husband-plaintiff and for the cost of repairs of plaintiffs' Rambler automobile, all allegedly resulting from an accident between plaintiffs' automobile and a certain Cadillac automobile stated to be owned by defendant Jingoli, but operated by defendant Roberts as the agent of defendant Jingoli and upon her business. To the complaint, containing allegation to the above effect, defendant Jingoli filed an answer denying her ownership of the Cadillac and the agency of Rob-

erts and averring that Roberts was operating the Cadillac as a bailee upon his own business, but containing no averment respecting the ownership of the vehicle. Defendant Jingoli also severed the claims of plaintiffs and joined wife-plaintiff as an additional defendant in connection with the claim of husband-plaintiff. Defendant filed a complaint against this additional defendant but later withdrew the same. Subsequent to the close of the pleadings, defendant Jingoli took the deposition, by oral examination, of Ann Suta, not a party to the action, who was represented by her private counsel at the taking thereof. The deponent, on instructions of her private counsel, refused to answer certain questions propounded to her by defendant Jingoli's attorney and plaintiffs' attorney. The justification for such refusal is now before us under Pa. R. C. P. 4019 (b).

The following appear from the answers given by Ann Suta without objection. Deponent is a married woman. Her husband, Louis E. Suta, was, on the date of the accident giving rise to this action, the owner of the Cadillac automobile involved in the collision with plaintiffs' Rambler. A discussion concerning the Cadillac took place between the deponent and Joanne Jingoli, daughter of defendant, Mrs. John (Anne) Jingoli, upon the day of the accident but prior thereto. At the time of the conversation, the Cadillac was parked in the driveway of deponent's home, but was later driven therefrom by Joanne Jingoli to the Jingoli driveway and parked there, with deponent's knowledge that Joanne was later going to take it from that last mentioned place to "the pool." Deponent gave Joanne permission to use the Cadillac when it was driven from deponent's home. While the above occurrences were taking place, deponent's husband Mr. Suta and Mr. John Jingoli were playing golf and, later in the day, while the Cadillac was still in the Jingoli driveway,

deponent and defendant Jingoli drove to the country club. Deponent personally knew defendant Roberts for sometime prior to the accident and that Joanne and he had been going together quite frequently prior to the accident. The Sutas had two children, for whom Joanne did babysitting.

The deponent refused to answer the following questions:

1. "What was your discussion with Joanne with respect to the Cadillac?"

2. "At the time that Joanne Jingoli took your Cadillac, or your husband's Cadillac from your property, did you know that subsequently Marvin Roberts was going to be with her?"

3. "Did you tell Joanne that day before she took the car or before you left her, anything about the car and its operation?"

4. "Did you tell Joanne Jingoli that day before you left with her mother anything about the car for her to tell Marvin Roberts?"

5. "Whom did you give·permission to?" (Referring to the use of the Cadillac prior to or at the time of the accident).

6. "Mrs. Suta, in answer to the last questions, you said that she had permission, that is Joanne. Did you give her permission?"

Paragraph 2 of defendant Jingoli's petition states:

"2. The deposition of Ann Suta was for the purpose of determining the manner in which the Cadillac owned by the husband of Mrs. Suta, came into the possession and was being operated by the defendant, Marvin Edward Roberts, at the time of the accident which was the subject of this suit."

Paragraph 3 of defendant Jingoli's petition states that depending upon the nature of the relationship between Mr. and Mrs. Suta and Roberts would deter-

mine whether there was an agency relationship between Roberts and Suta which would justify bringing Louis E. Suta into the case as an additional defendant or determine whether Ann Suta should be called as a witness on behalf of petitioner at the trial of the case.

It seems obvious that defendant hopes, by Mrs. Suta's testimony, to establish a basis of liability against Mr. Suta. But he is defeated by the Act of May 23, 1887, P. L. 158, sec. 5(c), 28 PS §317, which not only makes one spouse incompetent to testify against the other but absolutely prohibits it, except in the proceedings therein specified and this is not such a proceeding. The incompetency is an absolute disqualification which cannot be waived either by the parties or by the court: Canole v. Allen, 222 Pa. 156, 159 (1908); Ulrich's Case, 267 Pa. 233, 238 (1920); Hass v. Fitzpatrick, 117 Pa. Superior Ct. 21, 24 (1935); Hajdanic Petition, 75 Pitts. L. J. 549, 550 (1927); Schrieber v. Schrieber, 80 Pitts. L. J. 268, 269 (1931).

The statute is a legislative statement of the previous common-law rule, which was founded partly on the identity of interest of spouses and partly on a principle of public policy which deemed it necessary to guard the security and confidence of marriage even at the risk of an occasional failure of justice and is not confined to confidential communications: Hitner's Appeal, 54 Pa. 110, 117 (1867); Ehrhart v. Bear, 51 Pa. Superior Ct. 39, 43 (1912).

One spouse may not, under the statute, testify against the other even in support of his or her claim against the other, which is not within the exceptions mentioned in the statute (McBride's Appeal, 72 Pa. 480, 482 (1873); Cunningham v. Crucible Steel Casting Company, 56 Pa. Superior Ct. 568, 584 (1914); Boyle v. Haughey, 10 Phila. 98 (1873); in civil proceedings between them, Heckman v. Heckman, 215

Pa. 203 (1906) ), or against each other's interest in any action in which the other is not a party: Cornelius v. Hambay, 150 Pa. 359 (1892).

The rule is applicable not only in cases where the spouses are parties but also in any case in which one spouse seeks to give testimony which will affect the property rights of the other spouse: 5 Standard Pa. Practice (Revised), 305, 306: Pleasanton v. Nutt, 115 Pa. 266 (1886).

The rule does not apply if the interest of the other is remote or contingent (Musser v. Gardner, 66 Pa. 242 (1870)), or the action is a collateral proceeding not immediately affecting the spouse's mutual interests: Sayler v. Walter, 30 Pa. Superior Ct. 370 (1906). But it cannot be said that Mr. Suta's interest is remote, contingent or not immediately affected. Defendant's announced purpose of the depositions is to bring him in as a party. If Mrs. Suta's testimony would be of the context anticipated by defendant, Mr. Suta would face imminent inconvenience and expenses in preventing his joinder, or in defending himself and possible pecuniary damages.

The general rule is that a matter which is privileged at the trial of an action and, therefore, to be excluded from evidence, must be equally excluded from disclosure during pretrial discovery: Rosenbaum Co. v. Tomlinson, 7 D. & C. 2d 500, 503 (1956). See also Ecker v. McClimons, 6 D. & C. 2d 677, 683 (1956); Putnik Travel & Tourist Agency v. Goldberg, 17 D. & C. 2d 590, 592 (1958). These cases involved the privilege against self-incrimination. Although we have been unable to find any Pennsylvania decisions in point with respect to the incompetency of one spouse to give testimony against the other in pretrial discovery, we are of the opinion that the same rule would apply. In Kerr v. Clements, 148 Pa. Superior Ct. 378, 383 (1942), it is said:

"What is prohibited by the act is testimony in any form by the wife or husband *against* the other. Extrajudicial admissions are a sort of testimony; hence the prohibition of the act applies to them with the same force as though made by a spouse from the stand."

Pennsylvania Rule of Civil Procedure 4007(*a*) permits discovery ... "regarding any matter, not privileged, which is relevant to the subject matter involved in the action and will substantially aid in the preparation of the pleadings or the preparation or trial of the case."

Although the answers which Mrs. Suta might make to the proposed questions may be relevant and may substantially aid in the preparation of pleadings against Mr. Suta as an additional defendant and in the preparation or trial of the case against him, she, nevertheless, is not competent to testify against him. Section 5 of the Act of May 23, 1887 has not been suspended by the rules of civil procedure.

Paragraph 10 of defendant's petition alleges that the questions are material to the trial of the case and the pleadings "in that it may be that the answers to said questions will reveal that persons other than those already parties in this case should be joined as additional defendants." If the "persons" referred to here include Mr. Suta, then Mrs. Suta is incompetent for the reasons above stated. If the reference is to anyone other than Mr. Suta, upon whom Mrs. Suta's answers might tend to impose liability, then, obviously, defendant is fishing. It is quite clear from the pleadings in the case and defendant's petition that she does not presently know whether there is any foundation upon which liability of an additional defendant, other than Mr. Suta, as bailor of the Cadillac or as Roberts' principal, can be predicated, or who the possible additional defendant may prove to be. Discovery may not be used to determine whether or not a cause of action exists:

Rosenbaum Co. v. Tomlinson, supra. See also Evans Estate, 15 D. & C. 2d 619, at 626 (1958). Although Philco Corp. v. Sunstein, 22 D. & C. 2d 403, 406 (1960), might indicate a contrary holding, we are of the opinion that in this case defendant Jingoli's attempt to discover a basis of liability against an uncertain possible additional defendant is an attempt to determine whether or not a cause of action exists against someone. The rules do not permit discovery in aid of a contemplated action: Kuhlman Electric Co. v. Donegal Manufacturing Corp., 81 D. & C. 12 (1952).

There is some substance to the proposition that Mrs. Suta's testimony may substantially aid in the preparation or trial of the case. Plaintiffs have alleged that defendant Roberts was operating the Cadillac at the time of the accident as the agent of defendant Jingoli and upon her business. Defendant has denied this. Mrs. Suta's depositions, thus far taken, disclosed that her husband was then the owner of the vehicle and that she, prior to the time of the accident, gave Joanne Jingoli, defendant's daughter, permission to use the car. It would seem that the deponent had some knowledge of the circumstances under which the vehicle was being used or was authorized or permitted to be used, which might very well be of assistance to defendant in the preparation of her defense and her trial thereof. But the same testimony is suggestive that what may operate as a defense to Mrs. Jingoli may also operate against the interest of Mr. Suta. Since we do not know the nature of the answers she would give to questions 1 to 4, inclusive, we, of course cannot say whether they, or any of them, would be against Mr. Suta's interest. We are, therefore, confronted by an option, namely, to direct Mrs. Suta to answer and then exclude such part thereof as may prove to be adverse to his interest, or refuse such direction. If we pursue the former course, we may, in effect, be denying Mrs. Suta the incom-

petency which the statute has ordered that we give her, for her answers may be such that they disclose a basis of liability upon Mr. Suta and thereby furnish defendant Jingoli, or the other parties, with a foundation for, at least, making Mr. Suta a party in this or some other action; and, if we follow the alternate course, we may be depriving defendant of knowledge of testimony which will substantially aid her and yet not be against the interest of Mr. Suta. If we allow the questions to be put to the witness but direct her to claim the incompetency if the answers would be adverse to her husband's interest, her refusal to answer on this latter ground may raise an inference, in the mind of defendant Jingoli or other present parties, that the excluded testimony would establish a basis for liability in Mr. Suta, and an effort would then be made to join Mr. Suta in this or other litigation. This would also be defeating the purpose of the rule and the legislation.

We are of the opinion that, under the facts and circumstances of this case, Mrs. Suta should be granted the full incompetency of the rule and should not be required to answer questions nos. 1 to 4, inclusive, at this time. Compare: Developments in the Law—Discovery, 74 Harvard Law Review 940, at 1009 and footnote 539. Defendant may call Mrs. Suta or examine her upon the trial of the case, if defendant then so desires, and meet such objections as are then made.

The time, prescribed by Pa. R. C. P. 2253, within which to join Mr. Suta, or any other person as an additional defendant, has expired. But this would not remove the impediment of Mrs. Suta's incompetency to testify against her husband. We cannot now authoritatively say that we would or would not permit him to be joined upon application to us for that purpose. In any event, if such application were made, he would at least have to undergo the trouble and expense of counsel in an effort to prevent such joinder. If Mrs.

Suta's deposition should be of such a nature as to warrant such an application to us, the same would, therefore, be adverse to her husband's interest. Consequently, the incompetency imposed by the Act of May 23, 1887, remains. Compare: McFadden v. Reynolds, 20 W. N. C. 312 (1887), and Rosenbaum Co. v. Tomlinson, supra, wherein it is held that a witness may assert the privilege against self-incrimination even though the statute of limitation has barred a prosecution.

Questions 5 and 6 have already been answered by the deponent, as appears on the transcribed notes of the depositions, page 15, as follows:

"Q. Now, when Joanne Jingoli left your house with the Cadillac, left your driveway, did she have permission to use the Cadillac?

"A. From me.

"Q. You gave her permission?

"A. Yes.

"Q. Did she ask for the permission or did her mother?

"A. No, Joanne didn't ask for permission.

"Q. Did her mother ask you for permission for Joanne to drive it?

"A. No, she didn't ask either.

"Q. She did have permission, though?

"A. Yes."

She should not be required to answer again.

This court has consistently held that the Supreme Court Rules of Civil Procedure relating to discovery should be liberally construed and that the burden is on the objecting party to provide a basis for refusing the application for discovery, but they should not be so construed as to enable the applicant to "fish" for what he may hope to be helpful information: Minchino v. Borough of Quakertown, 88 D. & C. 83, 4 Bucks 15,

450

(1954), nor should they be so construed as to defeat the purpose of the Act of May 23, 1887, P. L. 158.

### Order

And now, to wit, June 9, 1961, upon consideration of the petition of defendant, Mrs. John Jingoli, Mrs. Ann Suta's answer thereto, and after argument before the court en banc, it is ordered and decreed that the rule granted on the said Ann Suta to show cause why she should not answer the questions propounded to her in the deposition on May 19, 1960, and hereinabove set forth in full, be and the same is hereby dismissed.

Judge Edwin H. Satterthwaite concurs in the result.