# COMMONWEALTH v. THOMAS RICHARDS.

APPEAL BY DEFENDANT FROM THE COURT OF QUARTER SESSIONS OF ALLEGHENY COUNTY.

Argued November 6, 1889—Decided January 6, 1890.

[To be reported.]

1. An agreement between husband and wife for an actual and immediate separation, if upon reasonable terms and actually carried into effect by both parties in good faith, will be as valid and binding upon the wife as upon the husband, though made without the intervention of a trustee.
(a) Husband and wife by a formal deed agreed and bound themselves to live apart, and the husband engaged to and did give the wife certain money and property "toward her better support and maintenance;" in consideration whereof she released him and his estate from "all claims, shares and interest therein."
2. In the absence of proof that there was fraud or unfairness in its procurement, that its terms were unreasonable, or that subsequent acts of the parties have avoided it, such deed is a bar to a proceeding commenced by the wife under the act of April 13, 1867, P. L. 78, to compel her husband to support and maintain her.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 217 October Term 1889, Sup. Ct.; court below, No. 563 March Term 1889, Q. S.

On May 10, 1889, there was filed in the court below a transcript of a proceeding before an alderman, wherein Thomas Richards, upon complaint of Emma Richards, was bound over to answer in said court a charge that on September 20, 1887, he, the said Thomas Richards, did without any cause or provocation desert and abandon the said Emma Richards, his lawful wife, and since said date had failed and refused to provide anything toward her support and maintenance.

Statement of Facts.

At the hearing before the court, on May 11, 1889, the defendant admitted that he was the husband of the prosecutrix, that he had been living separate and apart from her since March 11, 1886, and that since that date he had contributed nothing toward her support and maintenance. He offered in evidence, however, the following deed of separation, executed by himself and his wife, under seal, and duly acknowledged before a justice of the peace, with a separate examination of the wife :

"This indenture, made the 11th day of March, 1886, between Thomas Richards, of the borough of New Brighton, county of Beaver, and state of Pennsylvania, of the first part, and Emma, his wife, of the second part.

"Whereas divers disputes and unhappy differences have arisen between the said party of the first part and his said wife, for which reason they have consented and agreed to live separate and apart from each other during their natural lives; therefore, this indenture witnesseth, that the said party of the first part, in consideration of the premises and in pursuance thereof, doth hereby covenant, promise and agree to and with his said wife, that it shall and may be lawful for her, his said wife, at all times hereafter to live separate and apart from him; and that he shall and will allow and permit her to reside and be in such place and places, and in such family and families, and with such relations, friends, and other persons, and to follow and carry on such trade or business as she may from time to time choose or think fit to do, and he shall not nor will not at any time compel her to live with him, or molest, disturb or trouble her for living separate and apart from him, nor sue, molest or trouble any other person whomsoever for receiving, entertaining or harboring her; and that he will not without her consent visit her or knowingly enter any house or place where she shall dwell, reside or be, nor shall or will, at any time hereafter, claim or demand any of her money, jewels, plate, clothing, household goods, furniture or stock in trade which she now hath in her power, custody or possession, or shall hereafter procure, or which shall be devised or given to her, or that she may otherwise acquire, and that she shall and may enjoy and absolutely dispose of the same as if she were a feme sole and not married; and further that the said party of the

first part shall and will well and truly pay, or cause to be paid unto her, his said wife, for and towards her better support and maintenance, the sum of fifty dollars in hand, and shall and will set over and transfer to her absolutely such of his household goods and furniture as she has or may select, valued at one hundred dollars, and four shares of stock of the Co-operative Foundry of Beaver Falls, Pennsylvania, of the par value of one hundred dollars per share, free and clear of all charges and deductions whatsoever, the receipt and payment of which said money and the transfer and delivery of such goods and stock is hereby acknowledged by the said Emma Richards at and before the sealing and delivery hereof.

" And, in consideration of the premises and of the grants and payments made to her, the said Emma Richards, by her said husband as above set forth, she does hereby remise, release, quit-claim and forever discharge the said Thomas Richards, his heirs and assigns, and his estate now owned by him, or which he may hereafter acquire, of and from all claims, shares or interest therein which she now has or may or might have by reason of her said marriage, and she further agrees and desires that her said husband may have the control and custody of their child, William Emmett, but in case the said Thomas Richards dies, then the said Emma Richards is to have the control and custody of him.

" In witness whereof " etc.

The paper-book of the appellee stated that it was in evidence that a short time before this proceeding was instituted, the defendant spent one night with his wife and arranged with her to live together again, and that she should go to St. Louis, Mo., where he would join her in a few days; that she went to St. Louis and remained for three or four weeks, and not hearing from her husband she returned to Allegheny City. Such evidence, however, was not in any way brought upon the record.

On July 13, 1889, the court pronounced sentence that the defendant pay the costs of prosecution, pay to the prosecutrix the sum of $10 per month until otherwise ordered, and give security for his compliance with the sentence,[4] MAGEE, J., filing an opinion as follows:

On the hearing in court it was admitted by the defendant that

he was the husband of this prosecutrix and that he had been living separate and apart from his wife from March 11, 1886, and that from the time of said separation he had contributed nothing toward the support and maintenance of his wife. He, however, claimed that he was not liable to her for her support and maintenance, because their separation in 1886 took place under the terms of a written agreement entered into between them " to live separate and apart from each other during their naturals lives," on payment and terms then made in consideration of the separation agreed upon. The agreement then entered into was offered in evidence and is not denied, and is as follows, viz. : . . . .

On the execution and acknowledgment of these articles of separation, the parties separated, and have continued to live separate and apart ever since. The defendant complied with his part of the agreement, and paid to his wife the consideration therein mentioned. There is nothing in the evidence to indicate that the division of the property was not fairly made, or that any undue advantage was taken of the wife by the husband in the terms of separation. What was done was done understandingly, under the supervision and advice of counsel, and reduced to writing.

The counsel for the prosecutrix contends that the articles of separation entered into do not discharge the defendant from his obligation to support and maintain his wife, for the following reasons, viz. :

1. That the writing made directly between husband and wife, to live separate and apart, is not a valid and binding agreement.

2. If valid, it does not by its terms and covenants provide for the discharge of the husband from liability for the support and maintenance of the wife in the future.

3. That if the covenants do by implication include the husband's release, the wife is not thereby deprived of the remedy provided by the act of April 13, 1867, for a support and maintenance.

The first question suggested, we think is determined by Lehr v. Beaver, 8 W. &. S. 105, and other authorities, in which it is held substantially that agreements between husband and wife to live separate, are valid and effectual both in law and

in equity, provided their object be actual and immediate, and not a contingent and future separation; and this though the deed be made between the parties without the intervention of trustees: See also Agnew v. Frost, 11 Cent. R. 58.

The agreement in this case, under the authorities cited, is to be regarded and treated as a valid and binding agreement upon the parties. The object was actual and immediate, and not a future and contingent separation; it was entered into and executed with deliberation, and evidently with full understanding of the provisions, for it was prepared and signed under the supervision and advice of counsel learned in the law; the properties to be handed over were at once delivered, and the husband and wife parted under their agreement, and have continued to remain separate. Whatever, therefore, are the relative duties and obligations of the parties to one another under their agreement, the same are to be observed and enforced. So long as the agreement stands unrevoked by mutual consent, either in express terms, or by acts or conduct inconsistent with its continued existence, the legal effects of the contract can be enforced.

We come now to the second inquiry suggested, viz.: What are the legal duties and obligations assumed by the parties to the articles of separation as a valid and binding agreement?

They have mutually agreed "to live separate and apart from each other during their natural lives." The husband has, in fact, agreed not to molest or interfere with his wife in any way whatever, and permit her to enjoy and dispose of any and all property as though she were feme sole, and further, to pay for her better support and maintenance "$50 in hand, and transfer $100 in value of furniture, and four shares of the stock of the Co-operative Foundry, of Beaver Falls, of the value of $100 per share." The wife agrees, "to remise, release, quitclaim, and forever discharge the said husband, his heirs and assigns, and his estate now owned by him, or which he may hereafter acquire, of and from all claims, shares or interest therein, which she now has or may or might have by reason of her said marriage, and, further, that the husband during his life shall have the custody of their child."

Do these stipulations or conditions affect the marital obligation to support and maintain the wife in the future? It is

clear that there is no discharge from liability in express and unequivocal terms. If it is to be found in the paper, it must be as an inference from the general terms used, or as an incident to an agreement to live separate and apart. We see nothing in the covenants of the husband to indicate an intent to secure exemption from future maintenance. It is true that he agrees " to pay for her better support and maintenance," $50 in hand, $100 in furniture, and $400 in stock (worthless in the end), but the inference that such words were intended to cover her support for all time, in the absence of express terms, would be, we take it, a strained view of its meaning. Does the covenant of the wife relieve the husband? It does not appear to us to have that effect. The interpretation which might fairly be given to its meaning would be a release of his estate from the dower interest of the wife in property then held or to be acquired. That such is the unquestionable effect of the language cannot be denied, and we think that ought to be the extent of its application. We take the view, that if the husband is to secure discharge from the marital obligation to support and maintain his wife, otherwise than by a decree in divorce, the stipulation in the agreement for such result as a consequence of amicable separation ought to be made to appear, as the contract of the parties, in plain and unmistakable terms. To take away the right from the wife it ought to be justified by express words or by necessary implication, and in the writing we find neither of these essentials.

If correct in our view, that the articles of separation do not relieve the husband from his marital obligation to support and maintain his wife, it would be unnecessary for us to discuss the third question, as we have suggested. It may be possible, however, that the view taken is not maintainable, and we therefore deem it proper to refer to the question.

Assuming that the words of the agreement do include within their meaning the discharge of the husband, will the agreement in such case operate as a bar to the proceeding or remedy afforded by the act of 1867 ?

We think that it may safely be assumed as the law that the husband, by an agreement made with his wife, cannot exempt himself from liability to support and maintain her, if she should become a charge on the public. But I would be inclined to

the opinion that the wife by her own act, where the public interests were not involved, might deprive herself of any resort to her husband for support as a personal right. If held to be capable of contracting, it may be contended reasonably that there ought to be no limit to its extent, in so far as it affects her individual rights and personal comfort. The opposite view, however, is taken in the case of Commonwealth v. Orth, 2 Pears. 446. In that case, a contract was entered into between the parties, with the interposition of a trustee of the wife, by which the husband bound himself to pay her a certain sum of money for past maintenance, and the sum of $12.50 per month so long as she should live, they agreeing to live separate. The wife, who at the time was in a state of health to maintain herself in part, became afterwards sickly, and commenced a proceeding in the Court of Quarter Sessions for maintenance under the act of April 13, 1867. The court say: "We are of opinion that by a fair construction of this act, it will apply to cases where husband and wife have separated by agreement as well as to those of desertion. . . . . The court is then, under the second section of the act, bound to inquire into the neglect and ability of the husband, and order such sum as shall be thought necessary and proper for the comfortable support and maintenance of the wife. . . . . It is a duty from which he cannot escape by a voluntary separation." The syllabus of the case states the purport of the decision to be that, "under the act of April 13, 1867, the court can make an order that a husband shall maintain his wife, when the parties have separated by agreement and the wife has no adequate means of support."

That statute is remedial in its nature and should be liberally construed so as to advance the remedy. When an allowance is agreed upon between husband and wife at the time of their separation, the sum must be sufficient therefor and punctually paid, else the court may order the payment of a larger sum.

All things considered, we have come to the conclusion that the agreement to separate, bearing date March 11, 1886, is not a bar to this proceeding, and that the remedy invoked and the information made presents for consideration and adjudication the rights of the wife, as well in a case of "neglect to maintain," as where the case is one of desertion.

The defendant excepted to the opinion and decree of the court, and at his instance a bill was sealed setting out in extenso the offer of the deed of separation, the ruling of the court thereon, and stating the grounds of the defendant's exception as follows:

1. The said deed of separation in evidence, and made part of this bill, is a bar to this proceeding.

2. By said deed, the prosecutrix released the defendant from all claims for support and maintenance.

3. In the absence of evidence, and a finding that prosecutrix is unable to support herself, or that she is, or is likely to become, a charge upon the public or her friends, said deed of separation is a bar to this proceeding.

The defendant then took this appeal, assigning for error, inter alia:

4. The sentence of the court.[4]

*Mr. J. M. Swearingen*, for the appellant:

1. The gist of the offence, under the statute, is a separation from the wife without reasonable cause—an intentional disregard of marital duty, and there must be affirmative proof of this. If this record does not show such fact, or if it shows the contrary, the judgment is erroneous: Overseers of Poor v. Smith, 2 S. & R. 363. It appears from this record that the defendant did not abandon his family, but that the prosecutrix left her husband and child, the separation taking place under and in pursuance of a deed of separation. That deed was valid and binding between the parties: Lehr v. Beaver, 8 W. & S. 105; Hutton v. Hutton, 3 Pa. 100; Dillinger's App., 35 Pa. 357; Hitner's App., 54 Pa. 110. The essential element of the case, that the separation was without reasonable cause, is therefore wanting.

2. The judgment should be reversed for another reason, viz.: that the wife has released her husband from all claim upon him for support. The release contained in the deed is twofold. In the first place, she releases the defendant personally; the plain meaning of which is that he is to be discharged from liability for support, and such undoubtedly was the intention of the parties. This position is strengthened by the subsequent language of the contract, for in the next clause

she renounces all claims upon the estate of her husband. The release of him personally, and the release of his estate, are not vain repetitions, but separate subjects, both of which were intended to be embraced in the contract.

3. If the prosecutrix were a charge upon the public, a different question would be presented. But she is not. There is no finding, nor was there any evidence that she is unable to maintain herself. The case is simply one between these two parties, in which neither the public nor any third person has any interest. Therefore, independent of the fact that she has released him, the wife cannot complain that the husband has not performed the duties imposed upon him by the marriage contract, when she has abandoned him and her child, and continues to disregard all her marital duties. Mutuality is of the essence of the obligations created by the contract of marriage, just as in the case of any other contract.

*Mr. C. S. Fetterman*, for the appellee :

1. Conceding that agreements of separation, with or without the intervention of trustees, are valid when their object and terms are reasonable and a reasonable provision is made for the future support of the wife, it does not follow that all such agreements will be sustained, regardless of the hardship imposed thereby on one or other of the parties. The cases cited for the appellant have no bearing upon the point in the present case, viz.: whether the husband can shield himself from his duty of support by an agreement which neither makes any provision for the future maintenance of the wife, nor releases him from the duty of supplying it.

2. Even though valid, the agreement would not prevent either party from at any time demanding a restoration of conjugal rights, regardless of it, and treating a refusal of the demand as a desertion: McKennan v. Phillips, 6 Wh. 571; 1 Bishop on Mar. & Div., §§ 636, 806 ; Dixon v. Harrell, 8 Car. & P. 717; Grove's App., 37 Pa. 443. The ground upon which all such cases proceed is, that any separation without legal sentence, for causes by law approved, is contrary to the policy of the law; and if a party has once consented to it, he may change his wrongful consent, and do right, by revoking at his pleasure: Bishop on Mar. & Div., § 806.

OPINION, MR. JUSTICE CLARK:

This is a proceeding under the act of April 13, 1867, P. L. 78, brought by Emma Richards against her husband, Thomas Richards, to obtain an order upon him for her maintenance and support. The complaint is that on September 20, 1887, the defendant, residing in Allegheny city, " did then and there, without any cause or provocation, desert and abandon " his wife, and since that day " has failed and refused to provide anything toward her support and maintenance." At the trial in the Quarter Sessions the defendant offered in evidence a deed of voluntary separation dated March 11, 1886, by the terms of which the parties, " in view of divers disputes and unhappy differences " which had arisen between them, had consented and agreed to live separate and apart from each other during their natural lives, etc. The husband agreed to, and actually did, place in the hands of his wife, " towards her better support and maintenance," the sum of $50 in cash, household goods to the amount of $100, and four shares of stock in the Co-operative Foundry of Beaver Falls, Pa., of the par value of $100 each. In consideration thereof the wife agreed to discharge the said Thomas Richards, his heirs and assigns, and his estate, from all claims, etc.; the husband to have the custody of their child, William Emmett, etc. The question as to the effect of these articles of separation is brought upon the record by a formal bill of exceptions, and, as no question is raised as to the disposition of the case on a certiorari, we will consider it as the parties have presented it.

That a valid agreement may be made for separation between a husband and wife, and for an allowance for her support, where the separation is inevitable and immediate, is now too well settled to admit of discussion or require a citation of authorities. The validity of such covenants, although exceptional in their status, has been established by repeated decisions of this court. Ordinarily these agreements, as in Dillinger's App., 35 Pa. 357, have been carried into effect through the medium of a trustee; but the undoubted weight of authority is that there may be a valid agreement for the separation directly between husband and wife, without the intervention of a trustee, which the courts will sanction: Hutton v. Hutton, 3 Pa. 100; Smith v. Knowles, 2 Gr. 413; Hitner's App., 54 Pa. 110; Garver v. Miller, 16 Ohio

527; Randall v. Randall, 37 Mich. 563; Dutton v. Dutton, 30 Ind. 452. In such cases the husband himself will be treated as a trustee for the specific purpose in view, and will be held accordingly. If the object of the agreement is actual and immediate, if the terms are reasonable, and it is actually carried into effect by both parties in good faith, it will be as binding upon the wife as upon her husband.

In the case at bar, we do not understand that there is any allegation of fraud or unfairness, or that the terms of the deed of separation were, in any respect, unreasonable. How, then, under such circumstances, can the husband, upon the complaint of the wife, be convicted of a crime in failing to do what he was under no legal obligation to do? Can his wife, after having by a formal deed bound him to permit her to live separate and alone, and absolved him from her maintenance, immediately thereafter enter a criminal complaint, and procure his arrest and conviction, for doing what she had bound him both in law and in equity to do? The proceedings are not under the act of 1836, but under the act of 1867; they are instituted by the wife, not by the children or by the overseers of the poor; and it is difficult to see how the wife, in such case, could at the same time hold her husband to perform the articles, and convict him of a crime for doing so. The absurdity of such a result is apparent. If the prosecution were in behalf of the children, or by the overseers of the poor, a question would be presented which it is not necessary now to discuss. Certainly a husband, as between himself and his wife, cannot be said to have separated himself from her without reasonable cause, when she has by deed placed him under legal obligation "not to visit her, or to enter any house where she may happen to be," and "to permit her to live separate from him," and to carry on business on her own account as if she were a feme sole.

If a proper provision has been made for a wife, her husband is not liable even for necessaries furnished for her support: Cany v. Patton, 2 Ash. 140; Alley v. Winn, 134 Mass. 77; and a party dealing with a married woman, known to be living apart from her husband, is put upon inquiry as to the cause of the separation. If this be so, for much stronger reasons will the husband, under such circumstances, be relieved from a criminal prosecution, instituted by the wife herself, to obtain an order for her maintenance.

If the deed of separation was fraudulently procured and the terms were unreasonable, or if after its execution it had become null and void by the acts of the parties, these facts should have been shown; but, standing upon the deed alone, the conviction was unwarranted by the proofs, and must be set aside.

The judgment is therefore reversed, and a procedendo awarded.