[No. 9135-2-I.   Division One.   April 15, 1982.]

MARTHA L. McGILL, *Appellant*, v. ALBERT HILL, *Respondent*.

*J. Richard Quirk,* for appellant.

*Gordon Livengood,* for respondent.

RINGOLD, J.—Martha McGill appeals the summary judgment of dismissal granted by the trial court in favor of Albert Hill. We affirm.

The parties were married in Kansas in September 1948. During the marriage Hill was employed at various Boeing Company locations and the Hills resided in the following places:

|         |   |       |                            |
|---------|---|-------|----------------------------|
| 9/48    | – | 7/49  | Wichita, Kansas            |
| 7/49    | – | 10/49 | Seattle, Washington        |
| 10/49   | – | 4/63  | Wichita, Kansas            |
| 4/63    | – | 8/66  | Metairie, Louisiana        |
| 8/66    | – | 8/67  | Wichita, Kansas            |
| 8/67    | – | 11/75 | Bellevue, Washington       |
| 11/75   | – | 8/77  | Westchester, Pennsylvania  |

On December 23, 1976, Hill filed a complaint for divorce in Pennsylvania. On May 19, 1977, following negotiations during which both parties were represented by counsel, the parties signed a separation agreement. McGill then answered the complaint and counterclaimed asking for divorce on the grounds of indignities. Following the appointment of a Master on the motion of the wife, pursuant to Pennsylvania law, testimony was taken at a hearing attended only by McGill and her counsel, although Hill was given notice. The Master entered findings of fact and conclusions of law, and recommended that a decree of divorce be granted on the grounds alleged in the counterclaim. The decree of divorce was entered August 19, 1977.

On August 20, 1979, McGill filed a complaint against her former spouse for division of property in King County Superior Court. She claimed that neither the divorce decree nor the separation agreement disposed of certain employment benefits, consisting of retirement and savings plans, earned by Hill at Boeing while the parties resided in community property jurisdictions during the course of the marriage. She further claimed that under Washington law the Boeing benefits, of unknown value, were now owned by the parties as tenants in common and asked for judgment in the amount of one–half of their value.[1] Both parties moved for summary judgment. In support of his motion, Hill introduced the separation agreement and evidence that the Boeing benefits were the subject of negotiation at the time of the divorce. He argued that the separation agreement disposed of all of the parties' property, including the Boeing benefits. McGill did not attack the validity of the separation agreement, but contended that the Boeing benefits were not disposed of by that document. On July 18, 1980,

---

[1]McGill later amended her complaint to add another cause of action, alleging that she was still entitled to monthly maintenance even though she had remarried and the separation agreement provided otherwise. In her Notice of Appeal McGill assigned error to the dismissal of this claim, but presented no argument on appeal. We decline to reach this issue. *See Farman v. Farman*, 25 Wn. App. 896, 611 P.2d 1314 (1980).

the trial court entered an order granting Hill's motion, denying McGill's motion, and dismissing the action with prejudice. This appeal follows.

■ Absent disputed facts, the construction of the separation agreement becomes a matter of law. *Yeats v. Estate of Yeats*, 90 Wn.2d 201, 580 P.2d 617 (1978). The issue on appeal is, therefore, whether the separation agreement disposed of the Boeing benefits. McGill argues that it did not and that the benefits are now owned by the parties as tenants in common, citing *Witzel v. Tena*, 48 Wn.2d 628, 295 P.2d 1115 (1956). Hill argues that under the separation agreement, McGill gave up all her rights in property "arising out of the marital relationship."

The separation agreement provided that upon entry of a divorce decree McGill would get the house, the car and all personal and household property except for nine items of personal property, which went to Hill, and the family silver, which would be held for the parties' daughter. The agreement also contained the following provisions:

BACKGROUND

A. Differences have arisen between Husband and Wife as a result of which they have been living separate and apart from each other and now desire by this Agreement to settle all financial and property rights between them; and

B. Husband and Wife respectively acknowledge that before signing this Agreement they have been fully advised by separate counsel . . . as to their rights and obligations, have read carefully and understand the terms of this Agreement, and have fully assented to this Agreement believing it to be just and fair.

TERMS

Now, THEREFORE, in consideration of the mutual promises hereinafter set forth, the parties, intending to be legally bound, mutually agree as follows:

. . .

13. Except as herein otherwise provided, Husband and Wife each hereby releases and forever discharges the other of and from all actions, causes of action, claims, rights, liabilities or demands whatsoever in law or in

equity which either ever had or now has against the other, except any cause of action for divorce. . . . No [divorce decree] shall in any way affect any of the terms hereof and this Agreement shall survive any such decree. . . .

14. Wife does hereby remise, release, quitclaim and forever discharge Husband and his estate of and from any and every claim of any nature and kind whatsoever, including but not limited to any claim arising out of the marital relationship or any alleged business relationship or any constructive or implied trust that she now has or may hereafter have against Husband, or in and to and against his property, . . . except only the rights accruing to Wife under this Agreement.[2] . . .

16. Husband and Wife shall, at any time and from time to time hereafter, execute and deliver any and all instruments and documents required to give full force and effect to the provisions of this Agreement. . . .

18. This Agreement shall be interpreted under the law of the Commonwealth of Pennsylvania.

19. Wife recites that counsel representing her was selected by her without any interference or suggestion by Husband, that she has complete confidence in her counsel, that she has consulted with him and that she has discussed and been advised by her counsel as to the nature of her rights and obligations herein, that she has the ability to and does understand the terms hereof, that she is satisfied they are fair, just and reasonable, that she desires to proceed in accordance with the terms hereof and that she consents hereto of her own volition and on advice of counsel, intending and desiring to be permanently bound hereby.

Under Washington law, a separation agreement must adequately identify the assets and put the parties on notice that the assets exist; the mutual release provisions of the agreement before us would be considered boilerplate language insufficient to dispose of the Boeing benefits. *See Yeats v. Estate of Yeats, supra.* Under Pennsylvania law,

---

[2]A similar clause, No. 15, pertains to the husband's release of the wife from all claims "in and to and against her property."

Hill argues, just the contrary is true. *See McGannon v. McGannon,* 241 Pa. Super. 45, 359 A.2d 431 (1976). The threshold issue, therefore, is which state's law should be used in determining whether the agreement disposed of the Boeing benefits. Hill points to the Pennsylvania choice of law clause in the agreement and argues that Pennsylvania law should apply. McGill agrees that the parties chose Pennsylvania law, but theorizes that since a Pennsylvania court would apply Pennsylvania law where a contract remedy is pursued in Pennsylvania, *see Silvestri v. Slatowski,* 423 Pa. 498, 224 A.2d 212 (1966); *Gillan v. Gillan,* 236 Pa. Super. 147, 345 A.2d 742 (1975), Washington courts should apply Washington law where the remedy is pursued in Washington.

■ We find no support for McGill's assertion that we should apply Washington law to the interpretation of the terms of a contract which contains an express choice of Pennsylvania law. The cited Pennsylvania cases are inapposite, the issue in those cases being the enforceability of certain terms in a separation agreement rather than their interpretation. The court in *Silvestri* applied the law of the forum, expressly stating: "We are not here concerned with the validity or construction of the contract or related questions, which would necessitate the application of conflict of laws principles." 423 Pa. at 501, 224 A.2d at 215. Furthermore the agreements at issue in these cases do not contain a choice of law clause. Absent relevant authority, we cannot apply Washington law here by merely citing Pennsylvania's application of its own law, as McGill would have us do. The solution to choice of law problems depends on more than mere symmetry.

We therefore turn to general conflict of laws principles. An express choice of law clause in a contract will be given effect, as expressing the intent of the parties, so long as application of the chosen law does not violate the fundamental public policy of the forum state. *See Whitaker v. Spiegel, Inc.,* 95 Wn.2d 661, 623 P.2d 1147, 637 P.2d 235 (1981). In the absence of a contrary intent, a choice of law

clause refers only to the local law of the state, not to the conflicts rules. Restatement (Second) of Conflict of Laws § 187(3) (1971). The parties here provided for interpretation of their contract under the laws of Pennsylvania. We find no indication that they intended the agreement to be interpreted under the laws of any other state. To interpret the agreement under Washington law, as McGill proposes, "would serve to defeat the basic objectives, namely those of certainty and predictability, which the choice–of–law provision was designed to achieve." *Id.,* comment *h* at 569. The agreement must be interpreted according to Pennsylvania rules of construction.

Pennsylvania is not a "community property" state. While we find no cases dealing with the precise situation before us, we note that Pennsylvania courts give great effect to mutual releases in separation agreements:

> In the instant case, the separation agreement entered into by the parties is a model of detail and clarity. Included are, *inter alia,* (1) a mutual release and discharge of all rights, claims, demands or causes of action between the parties; (2) a waiver by each party of any and all rights to share in the estate of the other party which might otherwise result from the marital relationship; (3) a clause entitled "Acceptance by Wife" . . . As former Chief Justice Bell asked . . . "[c]ould any language be clearer?"

(Citations omitted.) *McGannon v. McGannon, supra,* 241 Pa. Super. at 48–49, 359 A.2d at 433. Under Pennsylvania law, separation agreements are binding on the parties "if they are entered into without fraud or coercion, are reasonable, and have been actually carried into effect in good faith." *Olivieri v. Olivieri,* 242 Pa. Super. 457, 464 n.4, 364 A.2d 361, 364 (1976); *Commonwealth ex rel. McClenen v. McClenen,* 127 Pa. Super. 471, 193 A. 83 (1937); *Commonwealth v. Richards,* 131 Pa. 209, 18 A. 1007 (1890). Absent fraud, a waiver or release in a separation agreement supported by consideration is binding and serves as a bar to a future action for support. *Commonwealth ex rel. Jablonski v. Jablonski,* 179 Pa. Super. 498, 118 A.2d 222 (1955). A

separation agreement is a bargain between the parties "for complete personal and economic freedom from one another." *McGannon v. McGannon, supra,* 241 Pa. Super. at 49–50, 359 A.2d at 433.

With these considerations in mind, we consider the undisputed facts before the court. McGill does not attack the validity of the agreement, nor does she suggest fraud. She was represented by counsel, advised of her rights and obligations, and agreed to be permanently bound by the agreement. The record before the trial court indicates that the Boeing benefits were factors in the negotiation process. In a letter from McGill's attorney to Hill's just prior to execution of the separation agreement appears: "I want you to know that I have had a great deal of difficulty in getting Mrs. Hill to agree to the above proposal. She has strong feelings concerning the savings investment plan at Boeing to which she feels she is definitely entitled to one–half . . ."

Under these circumstances, we are convinced that the Pennsylvania courts would hold as a matter of law that the agreement vested sole ownership of the Boeing benefits in Hill, *McGannon v. McGannon, supra,* and would dismiss this action. The reference in the mutual release provisions to claims against property would be read as intending to vest sole ownership of all unspecified property in the name of the owner of record. The record owner of the Boeing benefits was Hill.

We hold, as well, that McGill is equitably estopped from asserting any rights in the Boeing benefits. An action for partition is equitable in nature. *Cummings v. Anderson,* 94 Wn.2d 135, 614 P.2d 1283 (1980). The requirements of equitable estoppel were set out in *Witzel v. Tena, supra* at 632:

> For the doctrine to be applicable, there must be (1) acts, statements, or admissions inconsistent with a claim subsequently asserted, (2) action or change of position on the part of the other party in reliance upon such acts, statements, or admissions, and (3) a resulting injustice to such other party, if the first party is allowed to contradict

or repudiate his former acts, statements, or admissions. *Kessinger v. Anderson,* 31 Wn. (2d) 157, 196 P. (2d) 289 (1948).

Here McGill released Hill from all further claim against all property arising from the marital relationship, and received substantial consideration in return. She does not contest the validity of the agreement. The record indicates that the Boeing benefits were taken into consideration in negotiating the separation agreement, and were left out of that agreement because Pennsylvania practice does not require inclusion. To allow McGill to now assert a claim against marital property given up in Pennsylvania would work an injustice against Hill, who, under Pennsylvania law, had the expectation of gaining "complete personal and economic freedom" from his former spouse.

The trial court did not err in dismissing the action on Hill's motion for summary judgment. The judgment of dismissal is affirmed.

SWANSON and CALLOW, JJ., concur.