Kenneth J. McGOWAN and Dorothy M. McGowan, husband and wife; and Robert F. McGowan and Joan M. McGowan, husband and wife, Plaintiffs,

v.

The PILLSBURY CO., a Delaware corporation; the Haagen–Dazs Company, Inc., a New Jersey corporation; the Haagen–Dazs Shoppe Company, Inc., a New Jersey corporation; HDI Liquidating Corporation, a New York corporation; HDF Liquidating Corporation, a New York corporation; WSC Liquidating Corporation, a New Jersey corporation; Doris Mattus Hurley and Kevin Hurley, individually and the marital community composed thereof; Reuben Mattus and Rose Mattus and the marital community composed thereof; and ABC Corporations 1–75, distributors of Haagen–Dazs ice cream, Defendants.

No. C85–1488Z.

United States District Court,
W.D. Washington,
at Seattle.

March 13, 1989.

John M. Silk and James A. Smith, Jr. of Smith & Leary, Seattle, Wash., for plaintiffs.

Clemens H. Barnes of Graham & Dunn, Seattle, Wash., and David C. Forsberg, Sally Ann Scoggin and Jeffrey J. Keyes of Briggs & Morgan, St. Paul, Minn., for defendants The Pillsbury Co., Haagen–Dazs Co. and Haagen–Dazs Shoppe Co., Inc.

James J. Ragen and Joseph Genster of Cairncross, Ragen & Hempelmann, Seattle, Wash., for defendants HDI Liquidating Corp., HDF Liquidating Corp., WSC Liquidating Corp., Hurley and Mattus.

## ORDER

ZILLY, District Judge.

This case arises from the formation, purchase and operation of a Haagen–Dazs shoppe franchise under an agreement dated June 9, 1982 ("Franchise Agreement"). The complaint, filed by the franchisee, includes claims against various Haagen–Dazs defendants for, among other things, breach of contract, fraud, antitrust violations, and violation of the Washington Consumer Protection Act and Franchise Investment Protection Act.

This dispute arises from the purchase and operation of a Haagen–Dazs franchise in Kirkland, Washington, by plaintiffs Kenneth and Robert McGowan and their marital communities ("the McGowans"). The Pillsbury Company, which purchased Haagen–Dazs, and its Haagen–Dazs subsidiaries are engaged in similar litigation with franchisees from at least seven other states. Defendants have moved for summary judgment dismissing all claims against all defendants. The Court, after hearing oral

argument on March 3, 1989, grants in part and denies in part defendants' motion.

The following are the defendants in this action:

The Pillsbury Co. ("Pillsbury"), a corporation with its principal place of business in Minnesota that purchased Haagen–Dazs in the summer of 1983;

The Haagen–Dazs Co. ("HDC"), a Pillsbury company that produces and distributes ice cream;

The Haagen–Dazs Franchise Liquidating Corp. (formerly Haagen–Dazs Franchise, Inc. ("HDF")),

The Haagen–Dazs Shoppe Co. ("HDSC"), a Pillsbury company that purchased the assets and liabilities of HDF;

Haagen–Dazs Inc. Liquidating Corp. (formerly Haagen–Dazs, Inc. ("HDI"), which distributed ice cream in the New York City area);

Woodbridge Sweets Liquidating Corp. (formerly Woodbridge Sweets Corp. ("WSC"), which produced and sold the ice cream);

Reuben Mattus, Rose Mattus, Doris Mattus Hurley, and Kevin Hurley, who were officers, directors and controlling shareholders of HDI, HDF and WSC.

ABC Corporations, which are regional and local distributors of bulk and prepackaged pints of Haagen–Dazs ice cream. These corporations are not parties to this motion.

This Court must view the evidence in the light most favorable to the McGowans, the nonmoving party. If direct evidence by the defendants conflict with the McGowans' direct evidence, the Court must assume the truth of their evidence with respect to that fact. Inferences must also be drawn in the light most favorable to the nonmoving party. *T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Ass'n,* 809 F.2d 626, 630–31 (9th Cir.1987). Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). *United Steelworkers v. Phelps Dodge Corp.,* 865 F.2d 1539 (9th Cir.1989).

PERSONAL JURISDICTION

■ Defendants first assert that Reuben Mattus, Rose Mattus, Doris Mattus Hurley, Kevin Hurley, and HDI should be dismissed for lack of personal jurisdiction. The McGowans bear the burden of establishing personal jurisdiction over the five defendants. *KVOS, Inc. v. Associated Press,* 299 U.S. 269, 57 S.Ct. 197, 81 L.Ed. 183 (1936); *Sinatra v. National Enquirer, Inc.,* 854 F.2d 1191, 1194 (9th Cir.1988). Where the court relies solely on affidavits and discovery materials, a plaintiff's burden is to present a prima facie case of jurisdiction.[1] *Pedersen Fisheries, Inc. v. Patti Industries, Inc.,* 563 F.Supp. 72, 74 (W.D.Wash.1983); Wright & Miller, Federal Practice and Procedure: Civil 2d § 1068, at 345 (1987).

In order for the Court to exercise personal jurisdiction over the five defendants, jurisdiction must be conferred by an applicable rule or statute. In addition, assertion of jurisdiction must accord with constitutional principles of due process. *Securities Investor Protection Corp. v. Vigman,* 764 F.2d 1309, 1313–14 (9th Cir.1985).

■ This Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332. A federal court obtains personal jurisdiction over a defendant if it is able to serve process on him or her. *Butcher's Union Local No. 498, United Food and Commercial Workers v. SDC Investment, Inc.,* 788 F.2d 535, 538 (9th Cir.1986). Further,

[i]n order to effect valid service of process, the federal court must meet two requirements: (1) some statute must authorize the service of process; and (2) the exercise of personal jurisdiction must not contravene any constitutionally protected right of the defendant. If service is not

---

1. Plaintiffs' burden rises to establishing personal jurisdiction by a preponderance of the evidence if the Court conducts a preliminary hearing on the issue. *Data Disc, Inc. v. Systems Technology Assoc., Inc.,* 557 F.2d 1280, 1285 (9th Cir.1977).

authorized under a relevant federal statute, the federal court must rely on the jurisdictional statute of the state in which the federal court is located to obtain jurisdiction. Fed.R.Civ.P. 4(e, f). *Id.* (citations omitted).

■ To determine whether personal jurisdiction over a defendant exists in a diversity action, the court inquires whether the assertion of jurisdiction satisfies the law of the forum state as well as due process requirements. *Sinatra v. National Enquirer, Inc.*, 854 F.2d 1191, 1194 (9th Cir. 1988); *Corporate Investment Business Brokers v. Melcher*, 824 F.2d 786, 787 (9th Cir.1987).

The McGowans assert that this Court has jurisdiction over the defendants under the Washington long-arm statute (RCW 4.28.185), the Consumer Protection Act ("CPA") (RCW 19.86), and the Franchise Investment Protection Act ("FIPA") (RCW 19.100).

■ Analysis of jurisdiction under the Washington long-arm statute involves two issues: (1) does the statutory language purport to extend jurisdiction, and (2) would imposing jurisdiction violate constitutional principles. *Grange Ins. Assoc. v. Idaho*, 110 Wash.2d 752, 756, 757 P.2d 933 (1988). Under the long-arm statute, Washington courts may assert jurisdiction over nonresident individuals and foreign corporations to the extent permitted by due process requirements, except where limited by the terms of the statute. *Werner v. Werner*, 84 Wash.2d 360, 364, 526 P.2d 370 (1974), *cited in Grange Ins. Assoc., supra*, 110 Wash.2d at 756, 757 P.2d 933. In the context of this case, the statutory and constitutional standards merge into a single due process test. *Shute v. Carnival Cruise Lines*, 863 F.2d 1437 (9th Cir.1988).

Federal due process requires that a nonresident defendant have minimum contacts with the forum state of a nature that the exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). The constitutional test may be satisfied in two ways. If the defendant has "substantial" or "continuous and systematic" contacts with the forum state, a court within the forum would have general jurisdiction over the defendant. If general jurisdiction is not present, but there is a strong relationship between the quality of the defendant's forum contacts and the cause of action, a court may have limited personal jurisdiction over the defendant. *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 839 (9th Cir.1986).

There is no contention that this Court has general jurisdiction over the five defendants. In order to establish limited or specific personal jurisdiction, the McGowans must demonstrate that the five defendants (1) have purposefully availed themselves of the privilege of conducting activities in the state; (2) that their injuries "arise out of or relate to" those activities; and (3) that the maintenance of the suit does not offend traditional notions of "fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–78, 105 S.Ct. 2174, 2181–85, 85 L.Ed.2d 528 (1985); *Shute v. Carnival Cruise Lines, supra.* Washington has adopted this test. *Grange Ins. Assoc.*, 110 Wash.2d at 758, 757 P.2d 933. It is essential to a showing of minimum contacts that the nonresident defendant purposefully directed his or her activities at residents of the forum state. *Burger King*, 471 U.S. at 472, 105 S.Ct. at 2181; *Shute v. Carnival Cruise Lines, supra.*

■ There is no bar to exercising personal jurisdiction over officers and employees of a non-resident corporation if they had the requisite minimum contacts. *Calder v. Jones*, 465 U.S. 783, 790, 104 S.Ct. 1482, 1487, 79 L.Ed.2d 804 (1984). Each defendant's contacts with the forum state must be assessed individually. *Id.* The Court finds that defendants Reuben Mattus, Rose Mattus, Kevin Hurley, and HDI Liquidating Corp. are not subject to the jurisdiction of this Court. These defendants' contacts with this state, if any at all, were insignificant.

Doris Hurley, on the other hand, allegedly was directly involved with the sale of

the franchise to the McGowans by sending a form letter and a brochure to them prior to execution of the Franchise Agreement, and she signed the Franchise Agreement. K. McGowan Aff. at 6, 9. The letter, in response to the receipt by HDF of the McGowans' $1000 deposit on the franchise fee, welcomed the McGowans to the "growing family of Haagen–Dazs Shoppes," and characterized the relationship between Haagen–Dazs and the McGowans. Affidavit of K. McGowan, ex. B. The letter referred the McGowans to an accompanying booklet that outlined steps they should follow prior to signing their Franchise Agreement. The letter and the booklet described the relationship between Haagen–Dazs and the McGowans and the degree of support Haagen–Dazs would provide them in a manner that encouraged the McGowans to expend their resources to establish their Shoppe and sign the 10–year Franchise Agreement.

For the purposes of this motion, the Court considers Doris a participant in the dialogue culminating in the Franchise Agreement. She purposefully directed her statements to residents of this state in hopes of selling them franchises. Further, the McGowans' injury related to Doris' letter and booklet, which allegedly contained misrepresentations and contributed to the McGowan's belief that they could rely on Haagen–Dazs to look out for their best interests. The purposeful nature of her letter and the benefit she hoped to enjoy from the agreement with the McGowans renders maintenance of this suit against her consistent with "traditional notions of fair play and substantial justice." *See Burger King Corp. v. Rudzewicz,* 471 U.S. at 472–78, 105 S.Ct. at 2181–85. Accordingly, the Court holds that exercising personal jurisdiction over Doris Hurley comports with the requirements of due process.

Ms. Hurley is subject to the personal jurisdiction of this Court.[2]

The remaining moving defendants, Pillsbury, HDC, HDF, HDSC, WSC, and Doris Hurley, will be referred to collectively as "Haagen–Dazs."

## FIRST AND SECOND CLAIMS: FRAUD AND MISREPRESENTATION

### A. Proper Parties

■ Defendants contend that Pillsbury and its subsidiaries HDC and HDSC acquired the assets of the pre-existing Haagen–Dazs companies after the McGowans opened their shoppe, and hence, there is no basis on which these companies can be held liable for any alleged pre-acquisition tortious conduct of HDF employees. Defendants further argue that Doris Hurley cannot be liable simply because she was an officer of HDF for the allegedly fraudulent conduct of HDF's agents. Defendants also maintain there is no evidence that WSC was involved in the alleged fraud or misrepresentations.

There is evidence HDSC purchased the liabilities of HDF along with its assets. See Ex. J to Silk affidavit. Plaintiffs' fraud claims include statements contained in Doris Hurley's letter to the McGowans and the accompanying booklet. The Court holds that, for the purposes of this motion, HDF, HDSC, and Doris Hurley are proper defendants to plaintiffs' claim for fraud and misrepresentation. This claim is dismissed against Pillsbury, HDC, and WSC.[3]

### B. Statute of Limitations

A three-year statute of limitations applies to actions for fraud. RCW 4.16.-080(4). The statute begins to run from the date the plaintiff discovered or should have discovered the fraud. *Id.* The complaint was filed on August 1, 1985, after an agreement extending the limitations period three months,[4] so no fraud claim may be

---

**2.** The Court does not need to address whether the CPA or FIPA justify the exercise of personal jurisdiction over the other four defendants because the long-arm statute authorizes the broadest exercise of jurisdiction consistent with due process.

**3.** Plaintiffs also named HDI, Reuben Mattus, Rose Mattus and Kevin Hurley. This Order has dismissed these parties for lack of personal jurisdiction. See *supra.*

**4.** The parties agreed in June 1985 to toll the statute of limitations through August 1, 1985. Exhibit S to Scoggin Affidavit.

brought that was discoverable more than three years (plus three months) prior. Plaintiffs have presented evidence sufficient for the purposes of this motion that they discovered the misrepresentations giving rise to their fraud claim within the limitations period.

### C. Elements of Fraud

■ The elements of fraud must be proved by clear, cogent, and convincing evidence. *E.g., Tokarz v. Frontier Savings & Loan Ass'n,* 33 Wash.App. 456, 463, 656 P.2d 1089 (1982). The statement upon which a fraud claim is based must be a representation of an existing fact. *Shook v. Scott,* 56 Wash.2d 351, 355, 353 P.2d 431 (1960); *Tokarz,* 33 Wash.App. at 463, 656 P.2d 1089. The alleged misrepresentations appear to suggest statements of future performance rather than representations of an existing fact. However, in viewing the evidence in a light most favorable to the nonmoving party, the Court concludes that there is an issue of fact as to whether the alleged statements will support plaintiffs' claim for fraud and misrepresentation.

### THIRD CLAIM: BREACH OF FIDUCIARY RELATIONSHIP

■ A fiduciary relationship permits an individual to relax his or her guard and trust another to care for their interests. *Liebergesell v. Evans,* 93 Wash.2d 881, 889–90, 613 P.2d 1170 (1980). Generally, parties to a franchise agreement deal at arm's length. *See, e.g., Boat & Motor Mart v. Sea Ray Boats, Inc.,* 825 F.2d 1285, 1292 (9th Cir.1987). A fiduciary relationship may exist, however, in what is traditionally an arm's length transaction. *See Liebergesell v. Evans,* 93 Wash.2d at 889, 613 P.2d 1170. The existence of a fiduciary duty in such a case normally is a question of fact. *Id.* at 891, 613 P.2d 1170. Imposing a fiduciary relationship may be warranted "where a person whose relation with another is such that the latter justifiably expects his welfare to be cared for by the former." *Id.* at 890–01, 613 P.2d 1170 (quoting Restatement of Contracts § 472, comment c at 898 (1932)). A lack of business expertise on the part of one party and

a friendship between the contracting parties may establish the right to rely. *See Salter v. Heiser,* 36 Wash.2d 536, 219 P.2d 574 (1950), *cited in Liebergesell,* 93 Wash.2d at 891, 613 P.2d 1170. "Superior knowledge and assumption of the role of adviser," and friendship are two factors that may contribute to the establishment of a fiduciary relationship. *Liebergesell,* at 891, 613 P.2d 1170.

The McGowans have not presented sufficient evidence to create an issue of fact as to whether there existed a fiduciary relationship between the plaintiffs and defendants. Plaintiffs assert that defendants had superior knowledge and offered to provide expert assistance in various aspects of setting up their franchise, but there is no evidence of the kind of relationships discussed in *Liebergesell* that would justify imposing a fiduciary duty. There is no evidence that defendants assumed the role of adviser, befriended the McGowans, or caused them justifiably to expect defendants to care for their welfare. The Court dismisses the third cause of action for breach of fiduciary duty.

### FOURTH CLAIM: NEW YORK FRANCHISE SALES ACT

■ Paragraph 28 of the Franchise Agreement states that the franchise shall be deemed to have been made in the State of New York. Defendants argue nevertheless that the New York Franchise Sales Act ("NYFSA"), Article 33 of General Business Law, cannot apply because the offer and sales of the franchise was not performed in New York, as required by the Act. See N.Y.Gen. Business Law §§ 683(1) and 681(12)(a) & (b) (Consol.Online Ed.). Under Washington law, a contractual choice of law provision is given effect so long as the chosen law does not violate the fundamental public policy of Washington. *McGill v. Hill,* 31 Wash.App. 542, 548, 644 P.2d 680 (1982). The NYFSA does not violate the public policy of Washington. The Court will give effect to the intent of the parties and, for the purpose of the fourth claim, consider the franchise to have been made in New York. Accordingly,

plaintiffs may bring a claim alleging a violation of the NYFSA.

The statute of limitations for civil actions under the NYFSA is three years after the act or transaction constituting the violation. N.Y.Gen. Business Law § 691(4) (Consol.Online Ed.). The parties executed the Franchise Agreement on June 9, 1982. Prior to June 9, 1985, the parties agreed to toll any applicable statutes of limitations through August 1, 1985. Ex. S to Scoggin Affidavit. This action was filed on August 1, 1985. The statute of limitations does not bar this cause of action. The Court further finds that there are issues of fact as to whether Haagen–Dazs' conduct violated the NYFSA.

FIFTH CLAIM: WASHINGTON FRANCHISE INVESTMENT PROTECTION ACT

■ The McGowans claim that the defendants violated the Washington Franchise Investment Protection Act ("WFIPA"), RCW 19.100. This cause of action is not barred by the statute of limitations. As argued by plaintiffs, the "catch-all" two-year statute applies only where there is no other applicable statute of limitations. RCW 4.16.130. The six-year statute applicable to actions on written contracts, and the three-year statute applicable to oral contracts and fraud control here.

Defendants cannot sustain their burden in this motion by simply asserting that "there is no legal or factual basis for [plaintiffs' claims]." Defendants' Memo in Support at 39. The Court will not dismiss plaintiffs' WFIPA claim against Haagen–Dazs.

SIXTH CLAIM: WASHINGTON CONSUMER PROTECTION ACT

There are issues of fact as to Haagen–Dazs.

SEVENTH CLAIM: BREACH OF CONTRACT

A. Choice of Law

The Franchise Agreement has a New York choice of law provision governing any claims for breach of the contract. Agreement at ¶ 28. In a diversity action, the choice of law rules of the forum state apply. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Under Washington law, a contractual choice of law provision is given effect so long as the chosen law does not violate the fundamental public policy of Washington. *McGill v. Hill*, 31 Wash.App. 542, 548, 644 P.2d 680 (1982). The relevant New York laws do not violate the public policy of Washington.[5]

The McGowans maintain that the Court should find that the contract is unconscionable. The Court finds that the contract is not unconscionable, and therefore, by the terms of the contract, New York law applies to the merits of this claim.

B. Proper Parties

The Franchise Agreement was executed by HDF and later assigned to HDSC in July 1983. Defendants maintain that the remaining defendants were strangers to the contract and therefore were improperly named in the contract claim. Defendants cite several New York cases. See Defendants' Memo in Support at 8 n. 7. Plaintiffs do not dispute defendants' contention. Plaintiffs also do not argue that Doris Hurley should be personally liable under the contract claim. The Court dismisses all defendants except HDF and HDSC from the breach of contract claim.

The Court will not dismiss HDSC from claims of breach allegedly occurring prior to July 1, 1983, because there is evidence HDSC purchased HDF's liabilities along with its assets. See Ex. J to Silk Affidavit. HDSC does not explain why this acquisition should not include liability for breaches of contracts by HDF prior to the date of acquisition.

C. Oral Agreement Concerning the Distribution of Specialty Favors

The defendants claim that part of the McGowans' claim for breach of contract

---

**5.** The choice of law provision is limited to claims arising under the contract. The Court will apply the law of the State of Washington to the non-contract issues, except for the claim of violation of the NYFSA, *supra.*

**538**

must be dismissed because it relies on an oral agreement concerning the distribution of specialty favors allegedly made by defendants, and any such oral representations with respect to the Franchise Agreement are void under the statute of frauds. The New York Statute of Frauds provides in part:

Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking: by its terms is not to be performed within one year from the making thereof or the performance of which is not to be completed before the end of a lifetime.

N.Y.Gen.Oblig.Law § 5–701(a)(1) (Consol. Online Ed.). The Franchise Agreement was for a period of ten years, and hence fell within this statute. The defendants argue the McGowans' claims that are based upon oral terms extending beyond one year are void under the statute of frauds. The McGowans respond that they performed under the oral agreement, and such performance removes the contract from the statute.

 Part performance of an oral agreement may remove the agreement from the statute of frauds. Performance, however, that is equally consistent with an explanation having a basis in other than the alleged oral agreement will not remove the oral agreement from the bar of the statute of frauds. Rather, the performance must be "unequivocally referable" to the agreement. *Cunnison v. Richardson Greenshields Securities, Inc.*, 107 A.D.2d 50, 485 N.Y.S.2d 272, 276 (1985). The McGowans performed under the Franchise Agreement. That same performance does not unequivocally refer to the alleged oral agreement. Therefore, even if there was an oral agreement concerning specialty favors, that agreement is void under the statute of frauds. Accordingly, this oral

agreement does not support plaintiffs' claim of breach of contract.

**D. Oral Agreements Concerning Marketing and Promotion**

The same reasoning applies to the alleged oral agreement concerning marketing and promotions. Performance of the agreement would necessarily extend beyond a year from the date of the agreement and hence the agreement falls within the statute of frauds. It therefore is void and cannot support plaintiffs' claim for breach of contract.

**E. Site Selection and Lease Negotiation**

Defendants argue that the plaintiffs' claim that defendants violated an oral agreement to provide skilled services in site selection and lease negotiation must be dismissed as barred by the statute of limitations and that evidence of the alleged agreement is inadmissible under the parol evidence rule.[6]

 The McGowans' claim is subject to a three-year statute of limitations for oral contracts. RCW 4.16.080(3).[7] The period commences upon breach of the agreement, absent fraud or fiduciary relationship. *Ford v. International Harvester Co.*, 399 F.2d 749, 751 (9th Cir.1968) (applying Washington law). The McGowans' allege that Haagen–Dazs fraudulently concealed its breach, and they did not discover the breach until much later. The Court holds that for the purposes of this motion plaintiffs' claim of breach of the alleged oral agreement concerning site selection and lease negotiation is timely under the three-year limitations period.

 The Court also holds that the parol evidence rule is inapplicable to the oral agreement. The rule prohibits the introduction of evidence outside a written contract for the purpose of varying or adding to the agreement. *E.g., Katz v. American Technical Industries, Inc.*, 96 A.D.2d 932, 466 N.Y.S.2d 378, 380 (1983). The alleged

---

6. This oral agreement is not voided by the statute of frauds because it was to have been performed within a year.

7. Law of the forum state determines the applicable limitations period. *Sobo v. Sobo*, 28 Wash. App. 766, 768, 626 P.2d 520 (1981).

oral agreement here was made and intended to be completely performed prior to the execution of the Franchise Agreement. It is an agreement facially separate from the Franchise Agreement, and the plaintiffs do not offer it for the purpose of varying or adding to the Franchise Agreement.

### F. Shoppe Manual and Training

■ The parties do not appear to dispute that the contract entitled the plaintiffs to training and some kind of an operating manual. The dispute concerns whether HDF provided the proper level of training and whether the operating manual that was provided satisfied the obligation for providing a "Shoppe Manual" as described in paragraph 20.2 of the Franchise Agreement. The Court holds that there is a issue of fact as to whether HDF supplied the McGowans with a "Shoppe Manual" and with the requisite training and information.

### EIGHTH CLAIM: IMPLIED COVENANT OF GOOD FAITH

■ The McGowans have not cited authority that there exists a separate cause of action for breach of an implied covenant of good faith. A covenant of good faith is read into a contract to assist the court in evaluating a party's performance in a breach of contract claim. *Accord, Murphy v. American Home Products Corp.,* 58 N.Y.2d 293, 461 N.Y.S.2d 232, 237, 448 N.E.2d 86, 91 (1983). The covenant of good faith does not create independent substantive contractual rights. Rather, "the implied obligation is in aid and furtherance of other terms of the agreement." *Id.* The Court dismisses this claim as a separate cause of action.

### NINTH CLAIM: TORTIOUS INTERFERENCE

■ The elements of tortious interference with prospective economic advantage are: (1) a relationship with others contemplating a contract, with at least a reasonable expectancy of fruition, (2) the interferer knew of the relationship or it was reasonably apparent, (3) and the inter-

ference that caused the termination of the prospective relationship was intentional. *King v. Seattle,* 84 Wash.2d 239, 247, 525 P.2d 228 (1974). The third element, intent, encompasses the concept that the interference was unjustified or improper. *Scymanski v. Dufault,* 80 Wash.2d 77, 87, 491 P.2d 1050 (1971); *Pleas v. Seattle,* 49 Wash.App. 825, 832–33, 746 P.2d 823 (1987), *review granted,* 110 Wash.2d 1021 (1988). There are issues of material fact as to the elements of this claim.

### TENTH CLAIM: VIOLATION OF FEDERAL ANTITRUST LAWS

Plaintiffs withdrew this claim. The Court grants summary judgment on plaintiffs' tenth cause of action.

Accordingly, the Court GRANTS the motion for summary judgment dismissing defendants Reuben Mattus, Rose Mattus, Kevin Hurley, and HDI Liquidating Corp. for lack of personal jurisdiction. The Court GRANTS IN PART the motion for summary judgment of the remaining defendants. Claims 1 and 2, for fraud and misrepresentation, are dismissed against Pillsbury, HDC, and WSC only. Claim 3, for breach of fiduciary duty, is dismissed against all defendants. Claim 7, for breach of contract, is dismissed against all defendants except HDF and HDSC. Further, the oral agreements concerning the distribution of specialty favors, marketing and promotion are void under New York's statute of frauds. The eighth claim for breach of an implied covenant of good faith and the tenth claim for violation of federal antitrust laws are dismissed against all defendants. The Court DENIES summary judgment on the remainder of defendants' motion.

IT IS SO ORDERED.